This case involves the sale of stock in Dalcor Properties, Inc., the general partner in over 50 limited partnerships. Billy P. Shadrick and Oren J. Heffner (hereinafter "the buyers") entered into an agreement for the sale of Dalcor Properties, Inc., with S. David Johnston, Gary D. Joyce, and Danny L. Wiginton (hereinafter "the sellers"). The buyers claim that the agreement is ambiguous as to the purchase price.
Paragraph 3 of the agreement and its 10 subparts specify 10 different sums, which, when added together, equal the purchase price of the Dalcor stock. Paragraphs 3A through 3E require the payment of a certain percentage of proceeds derived from properties owned by Dalcor. Paragraph 3F requires the payment of fees and profits received up to December 31, 1984, on some of the projects previously listed in the contract, as well as a sum equal to the annual general partner fees, cash flow, and investor service fees on all projects described in subparagraphs A, C, D, and E.
Paragraph 3 reads as follows:
 "3. Purchase Price. The purchase price for said shares shall be composed of the following:
 "A. The sum of One Hundred Thirty-Four Thousand Five Hundred Eighty and 00/100 Dollars ($134,580.00), based upon the housing projects listed below:
"Heatherwood $ 2,000 "Meadowood 2,000 "Weeden Heights 2,000 "Greentree 5,000 "Hidden Acres 2,500 "Tanglewood — Dothan 3,000 "McDaniel Arms 3,000 "Calhoun City 3,000 "Cedarwood 3,000 "Lakeview 2,000 "Broadmeadow Place/Covington Housing, Ltd. 4,504 "Brookwood Park 4,527 "Danville Housing, Ltd./Heritage Towers 16,281 "Eastridge 5,304 "Cooks Avenue/Laurel Housing, Ltd. 1,960 "Heflin Oaks 5,055 "Peachtree 13,129 "Golf Terrace — Philadelphia Leased Housing 28,350 "Pinewood 10,217 "Uniontown 2,918 "Memphis Townhomes/Southwood Townhomes, Ltd. 3,500 "Pearson Park 3,258 "Towers West of Al., Ltd./Towers West of N.C., Ltd. 6,950 "Hilltop, Ltd./Oakman Terrace 1,127 --------- "$134,580 =========
 "The said One Hundred Thirty-four Thousand Five Hundred Eighty and 00/100 Dollars ($134,580.00) shall be paid as follows:
 "(1) The sum of Sixty-seven Thousand Two Hundred Ninety and 00/100 Dollars ($67,290.00) at closing in certified funds;
 "(2) The sum of Thirty-three Thousand Six Hundred Forty-five and 00/100 Dollars ($33,645.00), plus interest on the unpaid balance at nine percent (97%) per annum, on July 1, 1985; *Page 807 
 "(3) The sum of Thirty-three Thousand Six Hundred Forty-five and 00/100 Dollars ($33,645.00), plus interest on the unpaid balance at nine percent (9%) per annum, on July 1, 1986.
 "B. A sum equal to thirty percent (30%) of the amount which the Corporation and/or its affiliates and/or any of Purchasers' affiliates shall be entitled to receive in the future from operations based on the existing applicable limited partnership agreements and/or from any resale, resyndication, or refinancing for any project described in subparagraph A of this paragraph 3 (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from the partnerships paid to and/or due the general partner). It is understood and agreed, however, that operating deficits incurred after December 31, 1984 for each project shall be reimbursed prior to Sellers' entitlement to payment under this subparagraph B. It is further agreed that in calculating the amounts due from resale, resyndication or refinancing of the projects described in subparagraph A, the amounts which correspond to each such project in said subparagraph A shall be deducted from total receipts prior to applying the thirty percent (30%) factor.
 "C. A sum equal to the total amount which the Corporation and/or any of its affiliates and/or Purchasers' affiliates shall be entitled to receive in the future from operations based on existing applicable limited partnership agreements and/or from any resale, resyndication, or refinancing for any of the following projects (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from the partnerships paid to and/or due the general partner).
 "Northlake/Wesley Park "Hickory Hills "Pembrook Villas
 "D. If the following projects are sold within sixteen (16) months after closing under the existing agreement of sale with the March Company or any subsequent or amended agreement with the March Company, or to any other buyer, a sum equal to the total amount which the Corporation and/or its affiliates are entitled to receive through the date of sale of any projects set forth below in paragraph D and resulting from the sale from operations based on the existing applicable limited partnership agreements and/or from any resale, resyndication, or refinancing for any of the following projects (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from partnership paid and/or due to the general partner), through the date of sale of any projects set forth below in paragraph D.
"Berry Housing, Ltd./Springhill 7,296 "Broadway Terrace, Ltd./Woodhill 4,504 "Cherokee Bend 2,000 "Clarksdale Leased Housing, Ltd./Windcrest Manor 17,696 "Ellisville Leased Housing, Ltd./Dubose 5,120 "Greenville Leased Housing, Ltd./Delta Terrace 49,680 "Shelby Housing, Ltd./Hickory Creek 2,325 "Heathrow Place 3,000 "Hilltop Terrace 5,911 "Housing Technology Assoc. of Pitt County, Ltd./Wedgewood Arms 2,907 "Mars Hill Manor 2,000 "Tanglewood — Athens 3,000 "Chickasaw Way/Waynesboro Housing, Ltd. 8,000 "Summit Ridge 3,000 "Stonewood Apartments, Ltd./Elderly Housing, Ltd. 6,390 "Towncreek 5,780 "Woodridge 2,000 "New Main 854 "Sandidge Hills 854 "Rolling Hills 820 "Russell/DeVilla 1,000 "Westlake 7,908 "Rockwood 3,938 "Oak Park 2,000 *Page 808 
"Rivergrove 2,000 "Rivergrove II 2,000 "Skyland/McConnell Hills, Ltd. 29,160 "Southwood Gardens 12,720 --------- "$193,863
 "If the projects listed in this subparagraph D are not sold within sixteen (16) months after closing, the sum of One Hundred Ninety-three Thousand Eight Hundred Sixty-three 00/100 Dollars ($193,863.00) shall be immediately due and payable to Sellers and in addition a sum equal to thirty percent (30%) of the amount which the Corporation and/or any of its affiliates and/or Purchasers' affiliates are entitled to receive through the date of sale of any projects set forth above in paragraph D and resulting from sale from operations based on the existing applicable limited partnership agreements and/or from any resale, resyndication or refinancing for any of the above projects (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, and cash flow distributions earned from the partnerships paid to and/or due the general partner through the date of sale of any projects set forth above in paragraph D). It is provided, however, that amounts due to Sellers under this paragraph shall be adjusted by deducting therefrom any operating deficits which the Corporation may be required to fund up to a maximum of Thirty-two [Thousand] and 00/100 Dollars ($32,000.00). It is provided that the amount corresponding to any project in this subparagraph D which is sold within sixteen (16) months after the date of closing shall be deducted from the sum of One Hundred Ninety-three Thousand Eight Hundred Sixty-three and 00/100 Dollars ($193,863.00). It is further agree[d] that in calculating the amounts due from resale, resyndication, or refinancing of the projects described in this subparagraph D, the amounts which correspond to each such project in said subparagraph D shall be deducted from total receipts prior to applying the thirty percent (30%) factor.
 "E. A sum equal to the following for these projects:
"Stonebridge I 42,380.00 "Stonebridge II 23,818.00 --------- 66,198.00
"Southeastern Properties, Ltd. "Southeastern Properties, II, Ltd. "Southeastern Properties, III, Ltd. "Southeastern Properties, IV, Ltd. "Southeastern Properties, V, Ltd. "Southeastern Properties, VI, Ltd. "Southeastern Properties, VII, Ltd. "Southeastern Properties, VIII, Ltd. "Mississippi Housing Partners, Ltd.
 "(1) Upon the sale of any such project within thirty-six (36) months from the date of this agreement, the total amount which the Corporation is entitled to receive through the date of sale of any projects set forth above in paragraph E and resulting from the sale and/or from operations based on the existing applicable limited partnership agreement and/or from any resale, resyndication, or refinancing (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from partnerships to general partners) through the date of sale of any projects set forth above in paragraph [the letter written at this point is illegible]. If Stonebridge I and/or Stonebridge II has not sold within thirty-six months from the date of closing, the Sellers shall be paid forthwith the amount corresponding to each of said projects above which was not sold within thirty-six months from the date of closing.
 "(2) Upon the sale of any such project in the fourth (4th) year following closing, Eighty percent (80%) of the amount which the corporation is entitled to receive through the date of sale of any projects set forth above in paragraph E. *Page 809 
and resulting from operations based on the existing applicable limited partnership agreement and/or from any resale, resyndication, or refinancing (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from partnerships to general partner) through the date of sale of any projects as set forth in paragraph [the letter written at this point is illegible].
 "(3) Upon the sale of any such project in the fifth (5th) year following closing, sixty percent (60%) of the amount which the corporation is entitled to receive through the date of sale of any projects set forth in paragraph E and resulting from operations based on the existing applicable limited partnership agreement and/or from any resale, resyndication, or refinancing (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from partnerships to general partner).
 "(4) Upon the sale of any such project in the Sixth (6th) year following closing, Forty percent (40%) of the amount which the corporation is entitled to receive through the date of sale of any projects set forth in paragraph E and resulting from operations based on the existing applicable limited partnership agreement and/or from any resale, resyndication, or refinancing (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from partnership to general partner) through the date of sale of any projects set forth in paragraph E.
 "(5) Upon the sale of any such project at any time after the sixth (6th) year following closing, Thirty percent (30%) of the amount which the corporation is entitled to receive through the date of sale of any projects set forth in Paragraph E and resulting from operations based on the existing applicable limited partnership agreement and/or from any resale, resyndication, or refinancing (including, but not limited to, real estate commissions, resale fees, proceeds from resale and annual investor service fees, annual general partner fees, cash flow distributions earned from partnership to general partner), through the date of sale of any projects set forth in paragraph E.
 "F. A sum equal to the annual general partner fees, cash flow, and investor service fees, on all projects described in subparagraphs, A, C, D, and E, including a sum equal to all such fees and cash flow earned on said projects as of December 31, 1984.
 "G. A sum equal to all amounts received by the corporation or its subsidiary from partner capital contributions from partnership loans as instructed by the Seller, such as note collection and/or fees earned from syndication.
 "H. A sum equal to all amounts received by the Corporation or its subsidiary from their interests in joint ventures existing on the date of closing.
 "I. A sum equal to the total of the notes receivable, loans and advances receivable, fees receivable from syndication, general partner fees receivable, investor service fees, partnership fees receivable as shown on Exhibits D-1 through D-14 attached hereto [omitted from this opinion]. This sum shall be fully paid to the Sellers prior to repayment of any monies which have been advanced by the Purchasers and/or their affiliates for partnership operations.
 "J. In computing amounts due under this agreement Sellers shall not be entitled to the sums due until the base upon which said sums are calculated [has] been actually received by the Corporation, its affiliates, the Purchasers, or Purchasers' affiliates."
Paragraph 3F is the source of the parties' disagreement.
The buyers allege that paragraph 3F is ambiguous because it sets out the amount to be paid in a manner different from paragraphs 3A through 3E. The buyers also allege that 3F is inconsistent because *Page 810 
it requires the payment of fees and profits derived from some of the same sources mentioned in other preceding paragraphs. The sellers allege that the contract entitles them not only to the sum of the fees in 3F, but also to the sum of the percentages of profits specified in paragraphs 3A through 3J.
This dispute was brought to the court's attention by First Alabama Bank of Huntsville, which, by agreement of the parties, was to act as the escrow agent. As the agreement stated, the bank received the stock certificates from the sellers. When the parties disagreed as to whether the purchase price had been paid by the buyers, the bank filed an interpleader action, listing all persons involved in the agreement. The court discharged the bank from the action and from any liability. The bank delivered the stock certificates to the clerk of the court for safekeeping.
By order of the court, the sellers became the plaintiffs and the buyers became the defendants. The sellers' complaint alleged that the buyers were in default of the original agreement for failure to pay the agreed-upon purchase price and that as a result of the default the agreement was void. The buyers alleged that they were not in default and that the sellers' actions amounted to anticipatory repudiation or breach of the agreement. The buyers asked the court to reform the allegedly ambiguous purchase price. The trial court found no ambiguity in paragraph 3F and granted the sellers a summary judgment. The buyers appealed.
Whether a contract is ambiguous is a question of law. P SBusiness, Inc. v. South Central Bell Telephone Co.,466 So.2d 928 (Ala. 1985). If the meaning of the contract can be discerned through a plain reading, the court will not twist the language in order to create ambiguities. ERA Commander Realty,Inc. v. Harrigan, 514 So.2d 1329 (Ala. 1987). The court will give a natural meaning to the words in a contract so that all provisions of the contract are given a reasonable interpretation. Federal Land Bank of New Orleans v. TerraResources, Inc., 373 So.2d 314 (Ala. 1979). We agree with the trial court that there is no ambiguity in this contract. The inclusion of paragraphs 3A through 3E in addition to paragraph 3F indicates that the purchase price was intended to be the sum of all the paragraphs, 3A through 3J.
The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, KENNEDY and INGRAM, JJ., concur.