Max C. Pope, Sr., as trustee of the bankruptcy estate of Apex Coal Corporation ("Apex"), is the plaintiff in an action pending in the Jefferson Circuit Court. He petitions for a writ of mandamus directing that court to set aside its order granting the defendants' motion to compel arbitration of Apex's claims.
Apex entered into a contract with Warco, Inc., the predecessor of Gulf States Paper Corporation, by which Apex was to extract coal from land owned by Warco. At issue is the arbitrability of the dispute that arose between the parties when Apex discovered that Warco and Gulf States had charged it a brokerage fee for each ton of coal Apex mined. Apex asserts that the contract does not provide for any such brokerage fee, and our reading of the contract discloses no such provision.
Under Apex and Warco's "Agreement for Coal Extraction Services," Apex was to receive 80% of the sales price for the coal that it mined from Warco's land. The Agreement contained two provisions for arbitration, one in paragraph 6 and the other in paragraph 23:
 "SIXTH: In the event of any differences of opinion or any controversy between Warco and [Apex] as to whether mining operations are being conducted in accordance with the provisions of this Agreement, such difference shall be arbitrated in the following manner: The parties hereto hereby agree to abide by the written findings of the majority of three mining engineers *Page 1158 
as arbitrators, one of whom shall be appointed by Warco, one by [Apex], and the third jointly by the two first chosen. . . ."
 "TWENTY-THIRD: [Apex] and Warco shall, each six (6) months from the beginning date of this Agreement, review the sum paid for the services rendered Warco by [Apex] and specifically consider such matters as the state of the coal market, adjusted costs as might affect [Apex] including employee wages, benefits, equipment repair and maintenance costs, fuel costs, and unanticipated taxes and reclamation requirements, which adjusted cost shall be considered in granting a change in the sum paid for [Apex's] services. In the event after thirty (30) days, the parties cannot agree as to the adjusted price, arbitration as heretofore provided in this Agreement shall be instituted to resolve the questions."
Apex filed for Chapter 11 bankruptcy protection in 1992, and in December 1993 it discovered that Warco had charged Apex a brokerage fee in the amount of $2.00 per ton for coal delivered under the Agreement. In April 1995, Apex's Chapter 11 bankruptcy case was converted to a Chapter 7 liquidation case. In August 1995, Pope, as the trustee in bankruptcy, commenced an action on behalf of Apex against Warco, Gulf States, William A. Walker (the manager of the minerals business for Gulf States), and fictitiously named defendants, alleging breach of contract, fraud, suppression, deception, conversion, and willful and wrongful interference with a business relationship. All these claims pertained to the charging of the brokerage fee, which, Apex alleges, "is not provided for in the Agreement for Coal Extraction Services and is contrary to the express provisions of same." The defendants moved to compel arbitration and to stay discovery, and the circuit judge granted the motion on the ground that the arbitration provision in Paragraph 23 was broad enough to cover the dispute over the brokerage fee.
The Federal Arbitration Act (FAA) provides, in pertinent part:
 "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2.
However, parties will not be required to arbitrate any dispute that they did not agree to arbitrate. First Options ofChicago, Inc. v. Kaplan, 514 U.S. 938, 945, 115 S.Ct. 1920,1925, 131 L.Ed.2d 985, 994 (1995); Mastrobuono v. ShearsonLehman Hutton, Inc., 514 U.S. 52, 57-58, 115 S.Ct. 1212, 1216,131 L.Ed.2d 76, 84 (1995); Volt Info. Sciences, Inc. v. Boardof Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479,109 S.Ct. 1248, 1256, 103 L.Ed.2d 488, 500 (1989); A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 361 (Ala. 1990); Ala. Code 1975, § 8-1-41(3).
Apex and Warco did not agree in Paragraph 6 to submit the instant dispute to arbitration. That paragraph provides for arbitration of disputes regarding mining operations, and the charging of a brokerage fee has nothing to do with the mining operations.
The circuit court held that the dispute was arbitrable under Paragraph 23, because that paragraph refers to disputes over "the sum paid for . . . services." However, the full phrase is "the sum paid for the services rendered Warco by Contractor [Apex]." If a "brokerage fee" were provided for, it would presumably be a sum paid by Apex (or deducted from a payment to Apex) for services rendered Apex by Warco. The language of the paragraph and of the contract in its entirety reveals that the parties expressed no intention to submit a dispute such as this one to arbitration. The paragraph provides that arbitration will be instituted "[i]n the event after thirty (30) days, the parties cannot agree as to the adjusted price." The "adjusted price" refers to the price of the coal, and the adjustments referred to are changes in market conditions, costs, and such factors affecting the cost and value of the coal itself that were not foreseeable *Page 1159 
at the time the contract was executed. This provision contemplates a bargaining process for adjustments in prices based on changing conditions, and a submission of a proposed adjustment to arbitration if the parties cannot agree during that process. It does not provide for arbitration of any and all disputes arising out of the contract that may affect the sums that Warco pays Apex. It certainly says nothing about arbitration of a claim that Warco breached the contract and committed fraud and conversion by deducting unauthorized sums from the amount paid to Apex.
For the foregoing reasons, the dispute does not come within the terms of the two limited arbitration clauses in the contract.
Warco and Gulf States also argue that Apex agreed to arbitrate this dispute, in a June 21, 1994, letter from its president, Jerry W. Williams, to Gulf States. In opposition to the motion to compel arbitration, however, Williams gave an affidavit in which he stated the following regarding that letter:
 "I withdrew my request to arbitrate the dispute regarding the brokerage fee because Gulf States/Warco agreed to renegotiate the agreement. Gulf States/Warco did not object to my withdrawing this dispute from arbitration."
This action was filed on August 4, 1995, more than a year after Williams had sent his letter suggesting arbitration of the brokerage fee dispute. According to Williams's affidavit, Gulf States, rather than submitting the controversy to arbitration, back at the time when Williams wrote the letter, offered to "renegotiate the agreement." After a failure of such negotiations, it cannot now invoke an earlier suggestion of arbitration by the then president of Apex.
Moreover, Apex is in bankruptcy, and this action has been filed by the trustee of the bankruptcy estate. The trustee is charged with a duty to administer the bankruptcy estate in the exercise of his sound discretion. "Clearly, the trustee is entitled to tremendous leeway in the exercise of his discretionary business judgment when operating the debtor's business." In re Vel Rey Properties, Inc., 174 B.R. 859, 864
(Bankr.D.D.C. 1994). In exercising this discretion, he should not be bound by earlier contrary actions of the corporate officers that have not led to any detrimental reliance by another party. "[I]t is clear that the conduct of the Debtor cannot operate as an estoppel against the Trustee." Matter ofMunzenreider Corp., 34 B.R. 82, 85 (Bankr.M.D.Fla. 1983). Gulf States, far from relying on Williams's letter proposing arbitration, instead suggested a "renegotiation" of the brokerage fee. Under these circumstances, the trustee of Apex's bankruptcy estate is not bound to arbitrate this dispute because of the June 1994 letter from Williams to Gulf States.
Because the arbitration clauses in the Agreement between Apex and Gulf States do not cover the instant dispute over the brokerage fee, there has been no agreement to arbitrate this dispute. For this reason and the other reasons stated in this opinion, the order compelling arbitration is due to be set aside.
WRIT GRANTED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., dissent, with opinions by HOOPER, C.J., and HOUSTON, J.