722 So.2d 740 (1998)
FIDELITY NATIONAL TITLE INSURANCE COMPANY OF TENNESSEE
v.
JERICHO MANAGEMENT, INC.
1950828.
Supreme Court of Alabama.
April 17, 1998.
*741 Guy V. Martin, Jr., of Martin, Drummond & Woosley, P.C., Birmingham, for appellant.
Stephen D. Heninger of Heninger, Burge & Vargo, Birmingham; and John R. Lavette of Morris & Lavette, Birmingham, for appellee.
James A. Bradford, Michael D. Freeman, and Teresa G. Minor of Balch & Bingham, L.L.P., Birmingham, for amici curiae American Land Title Ass'n; Dixie Land Title Ass'n, Inc.; Chicago Title Ins. Co.; Commonwealth Land Title Ins. Co.; First American Title Ins. Co.; Lawyers Title Ins. Corp.; Security Union Title Ins. Co.; Stewart Title Guaranty Co.; Ticor Title Ins. Co.; and Transnational Title Ins. Co., on application for rehearing.

On Application for Rehearing
PER CURIAM.
The opinion of this Court dated September 12, 1997, is withdrawn and the following is substituted therefor.
Fidelity National Title Insurance Company of Tennessee ("Fidelity") appeals from the trial court's order denying its motion to compel arbitration of claims presented in an action filed against it by Jericho Management, Inc. ("Jericho"). We reverse and remand.
Fidelity, a Tennessee corporation with its home office in Knoxville, Tennessee, issues title insurance policies in a number of states for the purpose of securing federally regulated loans. Jericho, an Alabama corporation, is an insured under one of those policies. Jericho filed an action in the Jefferson County Circuit Court against Fidelity, seeking damages based on allegations of breach of contract, bad faith refusal to pay an insurance claim, negligence, wantonness, and fraud. Fidelity moved to compel arbitration of these claims pursuant to the following arbitration provision contained in the title policy:
"Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect on the Date of Policy shall be binding on the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
"The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.
"A copy of the Rules may be obtained from the Company upon request."
As noted, the trial court denied Fidelity's motion, stating, in pertinent part:
"It appears to this Court that the agreement to arbitrate is limited. It provides *742 that arbitration may be demanded unless prohibited by applicable law. It does not appear that there was a mandatory agreement to arbitrate as there was in Allied-Bruce Terminix Companies v. Dobson, [513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)].
"The agreement in this case is that arbitration would not be required where prohibited by applicable law. There does not appear to be any reason why state law could not provide such a prohibition. Thus, the parties have agreed that Alabama's anti-arbitration law would apply."
Three issues are presented for our review: 1) Whether the particular language used in the arbitration provision evidences an intent on Fidelity's part to have claims filed against it by its Alabama insureds submitted to arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"); 2) Whether the title policy issued by Fidelity to Jericho "involves" interstate commerce, so as to invoke the preemptive provisions of the FAA; and 3) Whether Fidelity waived any right it had to demand arbitration.
The first issue concerns the first sentence in the arbitration provision:
"Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association."
(Emphasis added.) Fidelity contends that when this sentence is read in conjunction with the remainder of the arbitration provision, it is clear that the words "applicable law" refer to both state law and federal law. According to Fidelity, "applicable law" means "applicable law"; that is, Fidelity, seeing no ambiguity in those words, maintains that they contemplate a case-by-case determination of whether state arbitration law or federal arbitration law governs a particular dispute. Fidelity argues that the FAA is applicable in this case and that the trial court erred in holding that the arbitration provision evidences an intent on Fidelity's part to waive its right to arbitrate under federal law by "agree[ing] that Alabama's anti-arbitration law [Ala.Code 1975, § 8-1-41(3)] would apply." Jericho contends that the arbitration provision is ambiguous and should be construed in the light most favorable to it. Jericho argues that the other references in the arbitration provision to applicable state law reflect an intent on Fidelity's part to be bound by "applicable state arbitration law," which in Alabama prohibits the specific enforcement of a predispute arbitration provision. According to Jericho, the phrase "Unless prohibited by applicable law" is meaningless unless it is held to refer to "applicable state law."
Section 8-1-41 provides, in pertinent part:
"The following obligations cannot be specifically enforced:
"....
"(3) An agreement to submit a controversy to arbitration...."
Article III, § 42, of the Alabama Constitution of 1901 provides, in pertinent part, as follows:
"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one...."
Section 43 of the Alabama Constitution provides in pertinent part:
"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, ... the judicial [department] shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
As these statutory and constitutional provisions illustrate, all questions of propriety, wisdom, necessity, utility, and expediency with respect to the enforceability of predispute arbitration agreements are legislative, not judicial. Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). The only question for this Court concerns the power of the Legislature to prohibit the specific enforcement of such agreements. There appears to be nothing in Alabama's Constitution that in any way restricts the Legislature's *743 power to prohibit the enforcement of arbitration agreements. In fact, the Legislature's strong bias against arbitration may be explained, if not compelled, by two sections in Article I of the Alabama Constitution. Section 11 provides: "[T]he right of trial by jury shall remain inviolate." Section 36 states: "[T]his enumeration of certain rights shall not impair or deny others retained by the people; and, to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate." Because § 8-1-41(3) clearly expresses the public policy of this state, as duly enacted by the only body of state government possessing the constitutional authority to set such policy, we are required to approach this case with a philosophical bent in favor of upholding that policy if the law will allow. We recognize, of course, that the FAA preempts contrary state law and, thus, renders enforceable a predispute arbitration agreement contained in a contract that "involves" interstate commerce. See Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala.1997), citing, among other cases, Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). However, if the arbitration provision in Fidelity's policy is construed to mean what Jericho says it means, then this Court would be freed from the constraints of the Supremacy Clause, Article VI, United States Constitution, for it is well established, as the trial court held, that the parties to a contract may agree not to arbitrate their disputes. See Ex parte Pope, 706 So.2d 1156 (Ala.1997)
After carefully considering the record and the briefs, however, we are persuaded that the arbitration provision in Fidelity's policy is not ambiguous and, therefore, that it is not subject to construction by this Court. The record indicates that the arbitration provision is standard in form and was intended by its drafters to be used uniformly in land title policies issued by a number of title insurance companies throughout the various states. The provision clearly contemplates that either party to the contract may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association, unless arbitration would be "prohibited by applicable law." The drafters' specific references to state law in two other sentences in the arbitration provision indicates to us that the use of the broader words "applicable law" was meant to include both state and federal law, depending on which body of law is applicable under the circumstances. For example, if a particular title insurance transaction involves interstate commerce, then federal law preempts contrary state law, so as to render enforceable a predispute arbitration agreement. On the other hand, if a particular transaction does not involve interstate commerce, then applicable state law would apply, including a provision like Alabama's that prohibits the specific enforcement of predispute arbitration agreements. Furthermore, we note that although the FAA "declared a national policy favoring arbitration," Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), the scope of the FAA is not boundless. Section 2 of the FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. (Emphasis added.) This section clearly recognizes that in certain circumstances arbitration agreements are not enforceable, based on "applicable law." For the foregoing reasons, we conclude that the arbitration provision at issue here is not ambiguous, i.e., that the phrase "Unless prohibited by applicable law" is not meaningless, and that it refers to whatever law is applicable under the circumstances.
We note that the trial court did not specifically address the second and third issues; in fact, the record reflects that Jericho did not even raise the third issue in the trial court. Although this Court will affirm a trial court's judgment if it can tell that the judgment is supported on any valid legal ground, even though that ground was not asserted in the trial court and even though the trial court may have given an erroneous reason to *744 support its judgment, see Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala.1988), we decline to affirm the trial court's order denying Fidelity's motion to compel arbitration on the second or third grounds urged by Jerichothat the FAA has no field of operation and that Fidelity had waived its right to arbitration.
The FAA applies to a transaction that "involves" interstate commerce, and a transaction "involves" interstate commerce if it has virtually any tangible effect on the generation of goods or services for interstate markets and their distribution to the consumerHurst v. Tony Moore Imports, Inc., supra. In the present case, the title insurance policy, which was issued by a Tennessee corporation, protects an Alabama corporation's mortgage, in connection with a federally regulated loan transaction. We hold that Fidelity's title policy sufficiently affects interstate commerce to invoke the FAA.[1]
With respect to the third issue, we note that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby prejudices the party opposing arbitration. Companion Life Ins. Co. v. Whitesell Manufacturing, Inc., 670 So.2d 897 (Ala.1995). Because of the strong federal policy favoring arbitration, the party opposing arbitration bears a heavy burden of proving both that the opposing party substantially invoked the litigation process and that the invocation of that process was prejudicial. Any determination as to whether a party has waived the right to compel arbitration rests within the sound discretion of the trial court and has to be made on a case-by-case basis. See Companion Life Ins. Co. v. Whitesell Manufacturing, Inc.; Ex parte Merrill Lynch, Pierce, Fenner & Smith, 494 So.2d 1 (Ala.1986). Our cases continue to emphasize that a waiver of the right to compel arbitration will not be lightly inferred, and, therefore, that one seeking to prove waiver has a heavy burden. Ex parte Dyess, 709 So.2d 447 (Ala.1997); Ex parte Phelps, 672 So.2d 790 (Ala.1995). The record indicates that Fidelity initially moved to dismiss Jericho's complaint; that it later filed an answer (in which it requested a jury trial) and an amended answer; and that it participated in the discovery process for a number of months before seeking to enforce the arbitration provision. This Court has stated that filing a motion to dismiss, answering, and participating in discovery do not necessarily amount to a waiver, Ex parte Merrill Lynch, Pierce, Fenner & Smith, supra; however, under certain circumstances, these things can amount to a waiver. See Ex parte Smith, 706 So.2d 704 (Ala.1997). Although Jericho argues that Fidelity set out to prepare its case for trial and waited too long to move to compel arbitration, we decline to address for the first time on appeal whether Jericho has been prejudiced by Fidelity's delay in seeking arbitration.[2] Jericho did not raise waiver as an issue below and, therefore, did not attempt to establish before the trial court the extent to which it would be prejudiced, if any, by submitting the case to arbitration. Instead, Jericho opposed Fidelity's motion to compel arbitration by arguing only that there was no agreement to arbitrate and that the FAA did not apply because the contract did not involve interstate commerce. We do not hold that this issue has in any way been waived by Jericho. We conclude only that with the case in this posture, we think it imprudent to address whether Fidelity waived its right to compel *745 arbitration, when the resolution of that issue rests largely within the trial court's discretion.
The trial court's order denying Fidelity's motion to compel arbitration is reversed and the cause is remanded.
OPINION OF SEPTEMBER 12, 1997, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; REVERSED AND REMANDED.
HOOPER, C.J., and KENNEDY, J., concur.
HOUSTON, J., concurs specially.
MADDOX and SEE, JJ., concur in the result.
ALMON, SHORES, and COOK, JJ., dissent.
LYONS, J., recuses himself.
HOUSTON, Justice (concurring specially).
I concur in the per curiam opinion issued by this Court on application for rehearing. On the original submission of this case, I voted to affirm the trial court's order because I was persuaded that the phrase, "Unless prohibited by applicable law," rendered the arbitration provision in Fidelity's policy ambiguous. I thought that that phrase would be mere surplusage (meaningless) if it were not given the meaning contended by Jericho. Therefore, applying established principles of contract construction, I interpreted the contract in Jericho's favor, in an attempt to discern the intent of the contracting parties. Approaching the case in this manner freed me from the constraints of the Supremacy Clause, Article VI, United States Constitution, for it is well established that the parties to a contract may agree not to arbitrate their disputes. See Ex parte Pope, 706 So.2d 1156 (Ala.1997). However, upon reconsideration, in light of the excellent rehearing brief filed by Fidelity and the amicus curiae brief filed by the American Land Title Association and others in support of the rehearing application, I am now convinced that the arbitration provision in Fidelity's policy is not ambiguous and, therefore, that it is not subject to construction by this Court. I am, therefore, no longer freed from the constraints of the Supremacy Clause, which allowed the United States Supreme Court to trump the decisions of state supreme courts in Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). See my dissenting opinion in Terminix International Co. v. Jackson, 723 So.2d 555 (Ala.1998).
Since I voted on the original submission of this case, I have become aware of Art. IV, § 84, Constitution of Alabama of 1901:
"It shall be the duty of the legislature to pass such laws as may be necessary and proper to decide differences by arbitrators to be appointed by the parties who may choose that mode of adjustment."
Substantially the same provision has been in each previous Alabama Constitution. My vote, however, is not based upon this provision, because the applicability of this provision was not raised by the parties below, on appeal, or on rehearing.
What effect, if any, does § 84 have on the public policy of this state? Does it restrict the legislature's power to enact provisions such as Ala.Code 1975, § 8-1-41? These are questions to be resolved at a future date in another case when the issue has been properly raised in the trial court and fully briefed in this Court.
ALMON, Justice (dissenting).
I respectfully dissent from the majority's decision to grant the application for rehearing and to reverse the circuit court's denial of Fidelity National's motion to compel arbitration. I continue to believe that the phrase "unless prohibited by applicable law" incorporates § 8-1-41(3), Ala.Code 1975.
I reproduce below a portion of the text of my September 12, 1997, opinion in this casewithdrawn today by the majorityby which, with three concurrences and one concurrence in the result, this Court originally affirmed the circuit court's denial of Fidelity National's motion to compel arbitration:
"The phrase `unless prohibited by applicable law' either adds nothing to the meaning of the provision or else preserves the applicability of laws prohibiting arbitration. Fidelity National argues that it refers *746 equally to the FAA and all other applicable laws, and that arbitration is therefore not prohibited because the FAA preempts Ala. Code 1975, § 8-1-41(3), which prohibits specific enforcement of `[a]n agreement to submit a controversy to arbitration.'
"However, if the phrase `unless prohibited by applicable law' is given Fidelity National's construction, the phrase means nothing. Without that phrase in the arbitration clause, a person seeking to enforce the arbitration clause would invoke the FAA, and a person opposing arbitration would make the argument that the contract does not evidence a transaction involving interstate commerce, or that the party seeking arbitration had waived any right to demand arbitration, or other such arguments. If that phrase is given Fidelity National's construction, exactly the same issues will arise: does the FAA apply so as to make the arbitration clause enforceable, or does some other principle of law allow a party to successfully resist a demand for arbitration? In short, under Fidelity National's construction, the phrase `unless prohibited by applicable law' would mean simply that the contract is governed by the law that governs it, and it would be, therefore, mere surplusage.
"With the phrase `unless prohibited by applicable law' in the arbitration clause, however, a party invoking the right to seek a remedy in a court of law may argue that the phrase incorporates laws that prohibit arbitration agreements but that might otherwise be preempted by the FAA. In short, this phrase, which Fidelity National asserts was drafted for use nationwide and was drafted with awareness that some states have laws prohibiting arbitration but others do not, must be interpreted to allow such prohibitions to apply to title policies on land in such jurisdictions even though the prohibitions would otherwise be preempted by the FAA. We see no other meaning that the phrase could add to the contract.
"It is a standard principle of contract law that all terms in a contract should be construed so as to give them meaning and effect, rather than to render them meaningless.
"`[T]erms should be construed in pari materia and a construction adopted which gives effect to all the terms used. Hall v. Gulledge, 277 Ala. 580, 173 So.2d 571 (1965).'
Federal Land Bank of New Orleans v. Terra Resources, Inc., 373 So.2d 314, 320 (Ala.1979).
"`The court will give a natural meaning to the words in a contract so that all provisions of the contract are given a reasonable interpretation.'
Shadrick v. Johnston, 581 So.2d 805, 810 (Ala.1991) (citation omitted).
"`To hold otherwise would render one part or the other meaningless; we will not consider a part of an agreement to be meaningless where, as here, the language of the parts may be construed to give effect to each.'

Sullivan, Long & Hagerty v. Southern Electric Generating Co., 667 So.2d 722, 725 (Ala.1995) (citation omitted).
"The United States Supreme Court has held that generally applicable principles of contract construction are applicable to arbitration clauses:
"`When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts.'

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 993 (1995). Further, the Court stated in First Options:

"`After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, ... but to ensure that commercial arbitration agreements, like other contracts, "`are enforced according to their terms,'"... and according to the wishes of the parties.'
514 U.S. at 947, 115 S.Ct. at 1925, 131 L.Ed.2d at 995 (citations omitted).
"In Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76, 84 (1995), the *747 Court stated: `[T]he FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties.' In Mastrobuono, the Court applied general contract principles to an arbitration agreement, including the principle that a contract should be read to give effect to all its provisions and to render them consistent with one another:
`Finally respondents' reading of the two clauses violates another cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other.'
Mastrobuono, 514 U.S. at 63, 115 S.Ct. at 1219, 131 L.Ed.2d at 88 (emphasis added).
"Fidelity National points to the two references elsewhere in the arbitration provision to the laws of the state or the situs of the land.... Fidelity National argues that the exclusion of the word `state' from the phrase `applicable law' may be contrasted to these two references to the law of the state or the situs of the land, and it concludes that, therefore, the phrase `unless prohibited by applicable law" includes the FAA as well as applicable state law.
"This argument, however, only repeats the construction of the phrase that renders it entirely meaningless. The omission of the word `state' does not mean that the phrase was intended to be entirely meaningless, and its omission does not preclude a court from looking to state law that prohibits arbitration.
"There is another reason for declining to give the phrase Fidelity National's construction. A person buying a land title policy with this arbitration clause in it could look at this phrase and think, `My state prohibits enforcement of agreements to submit a controversy to arbitration, so this arbitration clause does not apply to me.' If Fidelity National's construction were allowed, the inclusion of this phrase could lull such a person into thinking that a title insurer could not invoke arbitration in a jurisdiction, such as Alabama, that prohibits enforcement of predispute agreements to arbitrate. We would not ascribe improper motives to the drafters of the phrase, but, unless it is given the interpretation advocated by Jericho and adopted by the circuit court, it could certainly have the effect of surprising unsuspecting purchasers of title policies in states where specific enforcement of predispute agreements to arbitrate is prohibited.
"For the foregoing reasons, we hold that the circuit court did not err in construing the phrase `unless prohibited by applicable law' to mean that the parties intended for Ala.Code 1975, § 8-1-41(3), to govern and to prohibit specific enforcement of the arbitration clause in this title policy. As the circuit court said, Fidelity National's `interpretation would render the language in this agreement meaningless.' The only construction of the phrase that allows it to have any effect is to hold that it incorporates law that, absent the FAA, would prohibit arbitration of a dispute arising out of the title policy. The circuit court construed it in this manner, and we affirm."
Because a majority now considers the arbitration clause to be enforceable, I dissent.
SHORES and COOK, JJ., concur.
NOTES
[1] We note that the record contains an affidavit in which Lance E. Perna, vice-president and senior claims counsel for Fidelity, stated that the title policy is funded by reserves held by Fidelity outside Alabama and is payable by checks issued on a California bank, and that Fidelity handles claims under its title policies out of its Dallas, Texas, office. After the trial court had ruled on Fidelity's motion to compel arbitration, Fidelity moved to supplement the record with this affidavit, stating that it supported the facts that it had argued before the trial court and that those facts were not contested by Jericho. Jericho apparently did not move to strike this affidavit; however, the record does not indicate that the trial court granted Fidelity's motion to supplement the record. Although we do not base our decision on information set out in this affidavit, it would further support our conclusion that Fidelity and Jericho are involved in an interstate insurance transaction.
[2] We note that Fidelity's counsel on appeal, who filed the motion to compel arbitration, is not the same as the counsel involved in the initial filings and the discovery process discussed above.