738 So.2d 806 (1999)
Charles H. McDOUGLE, Jr., and Ramsey, Baxley & McDougle
v.
Gary D. SILVERNELL and Barbara J. Silvernell.
1972204.
Supreme Court of Alabama.
April 9, 1999.
Rehearing Denied June 11, 1999.
Joe Espy III and Suzanne D. Edwards of Melton, Espy, Williams & Hayes, P.C., Montgomery, for appellants.
Deborah W. Hicks, Eufaula; and F. Paul Bland, Jr., Trial Lawyers for Public Justice, Washington, D.C., "of counsel."
HOUSTON, Justice.
The defendants, Charles H. McDougle, Jr., and the law firm of Ramsey, Baxley & McDougle appeal from the trial court's order denying their motion to compel arbitration of the various claims made against them by the plaintiffs, Gary D. Silvernell and his wife, Barbara J. Silvernell. We reverse and remand.
The Silvernells' claims arise out of their purchase of land in Barbour County. Charles McDougle, a licensed attorney, *807 handled the closing and also served as the agent and signatory for First American Title Insurance Company ("First American"), which, during the closing, issued to the Silvernells a "Commitment For Title Insurance." That commitment read in part:
"First American Title Insurance Company, a corporation of California, herein called the Company, for a valuable consideration, hereby commits to issue its policy or policies of title insurance as identified in Schedule A, in favor of the proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest covered hereby, in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the provisions of Schedules A and B and to the Conditions and Stipulations hereof.

". . . .
"This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six (6) months after the Effective Date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue such policy or policies is not the fault of the Company.
". . . .
"Conditions and Stipulations.
". . . .
"... In no event shall [the Company's] liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions, the Exclusions from Coverage and the Conditions and Stipulations of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein."
(Emphasis added.) Following the closing, First American issued a title insurance policy to the Silvernells; that policy contained the following arbitration provision:
"Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
"The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.
"A copy of the Rules may be obtained from the Company upon request."
Upon discovering certain defects in their title, the Silvernells sued McDougle, his law firm, and others, seeking damages based on allegations of fraud, wantonness, negligence, and breach of fiduciary duty. (McDougle and his law firm will hereinafter be referred to together as "McDougle.") McDougle moved to compel arbitration of the Silvernells' claims, based on the arbitration provision in the title policy.
*808 McDougle argues that the commitment issued during the closing incorporated by reference the arbitration provision in the policy that was later issued and that he had standing, as First American's agent, to enforce that provision. The Silvernells contend that the commitment for the title policy did not contain an arbitration provision; they argue that they did not agree before the closing to arbitrate any future claims they might have and that it was too late after the closing for First American to, as they say it, materially modify the insuring agreement by issuing a policy with an arbitration provision. The Silvernells categorize the policy as merely a "confirmation" of the terms set out in the commitment. The Silvernells also argue, in the alternative, that even if the arbitration provision is binding on them, McDougle has no standing to enforce it because he was not a party to the insurance policy.
After carefully examining the record and the briefs, we conclude that the Silvernells are subject to the arbitration provision in their title policy and that McDougle has standing to enforce that provision.
Section 2 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), provides that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable."[1] Whether a contract to arbitrate exists must be determined under general state-law contract principles. Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615 (Ala.1997); Ex Parte Rush, 730 So.2d 1175 (Ala.1999). This Court recognized long ago that a contract may incorporate the terms of another document by reference. In Ben Cheeseman Realty Co. v. Thompson, 216 Ala. 9, 12, 112 So. 151, 153 (1927), this Court stated:
"It is admitted by both sides that no question of fraud is presented. And in its absence where contracts contain extraneous references of fact and to other documents, the same [enter] therein to the extent that [they are] pertinent, and the parties are bound thereby. And he who omits to inform himself as to such [references of] fact or [as to the] contents and extent of such other writing referred to, in so far as it is reasonable and in contemplation of [the] parties to [the] contract, is bound thereby. Bates v. Harte, 124 Ala. 427, 26 So. 898 [(1899) ], 82 Am.St.Rep. 186, 70 L.R.A. p. 106, note; 6 R.C.L. § 43, p. 628."
This Court has recently recognized this rule in the arbitration context. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998) (stating that the parties' arbitration provision incorporated by reference the Commercial Arbitration Rules of the American Arbitration Association); Ex parte Conference America, Inc., 713 So.2d 953 (Ala.1998) (stating that where a contract contains a reference to another document, e.g., a reference to another document containing an arbitration provision, that document is incorporated into the contract). In addition, see 17A Am.Jur.2d Contracts § 400 (1991), which states in part:
"Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract and[,] therefore, may properly be considered in the construction of the contract. Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties." *809 See, also, 17A C.J.S. Contracts § 299 (1963).
The Silvernells do not argue that the arbitration provision itself was induced by fraud.[2] We also note that arbitration provisions are not per se unconscionable, Ex parte McNaughton, 728 So.2d 592 (Ala. 1998), and that they cannot be singled out for discriminatory treatment. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The arbitration provision in the Silvernells' policy appears to be standard in form. The commitment issued during the closing clearly apprised the Silvernells that the commitment was subject to the conditions and stipulations in the policy that would later be issued and that once that policy was issued it would then govern the rights and liabilities of the parties. Contrary to the Silvernells' contentions, First American did not materially alter its insuring agreement by issuing a title policy.[3] The commitment required First American to issue the policy, provided certain conditions were met. Because the conditions and stipulations set out in the policy, which included the arbitration provision, were expressly incorporated by reference into the commitment, the Silvernells' obligation to arbitrate was a part of the insuring agreement from the effective date of the commitment.[4]
Last term, in Fidelity National Title Ins. Co. of Tennessee v. Jericho Management, Inc., 722 So.2d 740 (Ala.1998), this Court held enforceable an arbitration provision virtually identical to the one at issue here. Although the specific issue presented here was not raised in Fidelity National, this Court in Fidelity National was concerned that a strained and unreasonable construction of the arbitration provision would cause unnecessary confusion in an industry that provides an invaluable service to those purchasing real property in Alabama. We have the same concern in this present case.
For the foregoing reasons, we hold that the arbitration provision is binding on the Silvernells and that McDougle, as First American's agent, has standing to enforce the provision. See Ex parte Gray, 686 So.2d 250 (Ala.1996); Georgia Power Co. v. Partin, 727 So.2d 2 (Ala.1998). The trial court's order denying McDougle's motion to compel arbitration is reversed and the case is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SEE, LYONS, and BROWN, JJ., concur.
KENNEDY, COOK, and JOHNSTONE, JJ., dissent.
COOK, Justice (dissenting).
The Silvernells, in connection with their purchase of real estate, purchased a title policy from First American Title Insurance Company ("First American"). Charles McDougle "was the closing attorney." Brief of Appellant, at 4. McDougle also "served as the agent and signatory for First American." Id. Hereinafter, he and his law firm, together, will be called "McDougle."
The closing occurred on September 15, 1994. At the closing, First American gave *810 the Silvernells a "commitment for an owner's policy of title insurance." Brief of Appellee, at 6. The commitment contained no arbitration clause. The seller paid for the title policy, pursuant to a provision in the real estate contract. Weeks later, that is, after all the money to First American had been paid and the deed had been signed and delivered, First American's title policy arrived. It contained an arbitration clause.
Eventually, the Silvernells discovered a number of defects in their title. They sued, among others, First American and McDougle. McDougle moved to compel arbitration, on the basis of the arbitration clause in First American's policy. The trial court denied the motion and McDougle appealed. The majority opinion compels arbitration.
This case is clearly distinguishable from cases involving "fraternal benefit societies," whose duly enacted "changes" to, or "amendments" of, their constitutions may, pursuant to Ala.Code 1975, § 27-34-29(c), become a part of an existing insurance contract. See Clayton v. Woodmen of the World Life Ins. Soc., 981 F.Supp. 1447, 1448-49 (M.D.Ala.1997); but see Ex parte Hopper, 736 So.2d 529 (Ala.1999). Here, the purchase of the policy required a one-time payment, which was made weeks before the arbitration clause appeared. Not only was there no way for the Silvernells to manifest any acceptance of the new provision, they were practically stuck with it. As the trial court's order stated:
"Once the sale of the real estate was closed (deed and money exchanged) and then later the policy issued, where, for the first time, the purchasers realize they are obligated to arbitrate their disputes regarding the title to the property, they cannot back out of the policy and thereby back out of the sale of the realty."
The result of the majority opinion is contrary to the law of contracts.
Moreover, McDougle relies on Ex parte Gray, 686 So.2d 250 (Ala.1996), for the proposition that, as First American's agent, McDougle should be able to enforce the arbitration agreement. However, as the Silvernells point out, Gray is distinguishable in that the arbitration clause in Gray expressly included the seller's agents, while the arbitration clause in this case does not.
I respectfully dissent.
JOHNSTONE, Justice (dissenting).
This appeal addresses the enforceability of an arbitration agreement in a title insurance policy issued pursuant to a previously issued title insurance binder which does not contain any language regarding arbitration, but which does incorporate by reference the policy to be issued and, in the language of the binder, "the Conditions and Stipulations of the form of policy," and which does contain language to the effect that liability under the policy is subject to those "Conditions and Stipulations." The plaintiffs first acquired the title insurance binder from the defendants (the title insurance company and its agents), then closed their purchase of the real estate to be covered by the title insurance, then received the policy, then discovered title defects, and finally sued the defendants. The defendant agents filed a motion to compel arbitration and, after the trial court denied it, brought this appeal.
The issue is whether the plaintiffs, in agreeing to the terms of the title insurance binder, agreed to the inclusion of the arbitration agreement in the insurance policy issued pursuant to the binder.
The majority of this Court, reversing and remanding to require arbitration, cites Ben Cheeseman Realty Co. v. Thompson, 216 Ala. 9, 112 So. 151 (1927), for the conclusion that the arbitration agreement itself is incorporated by reference into the title insurance binder to which the plaintiffs did agree. While Cheeseman does hold that parties to a contract may be bound by the terms of other documents incorporated by reference into the contract, *811 Cheeseman expressly limits this holding to those terms which are "reasonable and in contemplation of [the] parties to [the] contract." Cheeseman, 216 Ala. at 12, 112 So. at 153 (emphasis added). Only those terms which are reasonable and in contemplation of the parties to a contract may be effectively incorporated therein by reference.
Thus the majority begs the question by relying on the rule of Cheeseman. The very crux of the issue to be decided is whether the arbitration agreement is reasonable and in contemplation of the parties.
On the argument of incorporation by reference, none of the cases cited by the majority is factually analogous to the case before us. Ex parte Conference America, Inc., 713 So.2d 953 (Ala.1998), does not hold that an arbitration agreement was incorporated by reference into a contract. Rather, Ex parte Conference America specifically found and held that a particular arbitration agreement was not incorporated by reference into a particular contract.
In the case before us the parties made an initial contract (the title insurance binder) which provided for their making a final contract (the title insurance policy). The parties are disputing what terms the drafter of the final contract can legitimately include in it. The plaintiffs have, by virtue of the initial contract, vested rights in the contents of the final contract.
The analogous case of Lilley v. Gonzales, 417 So.2d 161 (Ala.1982), is instructive. There the plaintiffs made a contract (the initial contract) to purchase real property from the defendant and to pay him, in part, by a promissory note secured by the vendor's lien in a vendor's lien deed (the final contract). Although the purchase agreement did not provide for inclusion of a "due on sale clause" in the vendor's lien deed, the defendant seller refused to close the conveyance unless the plaintiff purchasers would execute and accept a vendor's lien deed containing such a clause. The purchasers did not agree to the inclusion of the "due on sale clause" and sued for specific performance of the purchase agreement. This Court held that the plaintiff purchasers were entitled to specific performance and that the defendant seller was not entitled to the inclusion of the "due on sale clause." This Court reasoned:
"We find no evidence supportive of [the defendant seller's] contention that, because of the familiarity of due on sale clauses in the Mobile area, buyers were laden with the burden of negating at the time the purchase agreement was negotiated any inference that such a clause would automatically become a part of any subsequent vendor's lien deed, despite its absence from the purchase agreement." Gonzales, 417 So.2d at 164. (Emphasis added.)
Thus this Court implicitly held that the only terms properly includable in the final contract would be those proved by evidence to be so familiar to such contracts that the parties should expect them.
None of the statements of the facts in the briefs in this appeal cites any evidence that arbitration clauses are familiar or standard to title insurance policies. Nor can the defendants rely on Fidelity Nat'l Title Ins. Co. of Tennessee v. Jericho Management, Inc., 722 So.2d 740 (Ala. 1998), for its finding that this provision is standard, because Jericho is not binding precedent, inasmuch as only three justices concurred, two more concurred only in the result, three dissented, and the last recused himself.
Because the defendants have presented no proof to this Court that the arbitration agreement is standard or familiar to title insurance policies, we cannot justly find or hold that the parties contemplated it so as to effectuate or to validate its incorporation by reference into the title insurance binder under the rule of Cheeseman, supra, or that the defendant legitimately included it in the title insurance policy under the rule of Gonzales, supra. Because the *812 arbitration agreement is not validly incorporated into the binder or legitimately included in the policy, the arbitration agreement should not be enforced, and the trial court should be affirmed in its denial of the motion to compel arbitration.
NOTES
[1] The Silvernells do not argue that this insurance transaction does not involve interstate commerce. In any event, we note that First American is a California corporation insuring for a premium the title to land in Alabama. The title policy sufficiently affects interstate commerce to invoke the FAA. See Fidelity National Title Ins. Co. of Tennessee v. Jericho Management, Inc., 722 So.2d 740 (Ala.1998).
[2] The Silvernells do state in their brief that McDougle did not tell them during the closing that the title policy contained an arbitration provision.
[3] The Silvernells do not argue that all of the terms in the title policy that are not also specifically referenced in the commitment are unenforceable; they argue only that the arbitration provision is unenforceable. However, the Silvernells cannot single out the arbitration provision for a challenge of this kind. Doctor's Associates, Inc. v. Casarotto, supra. To be consistent, they must take the position that all of the terms in the title policy that were not specifically referenced in the commitment are outside the scope of the insuring agreement.
[4] This, we think, distinguishes this case from the cases cited by the Silvernells, which stand for the proposition that once an agreement is reached it cannot be unilaterally altered by the addition of a material provision.