The defendants, Charles H. McDougle, Jr., and the law firm of Ramsey, Baxley McDougle appeal from the trial court's order denying their motion to compel arbitration of the various claims made against them by the plaintiffs, Gary D. Silvernell and his wife, Barbara J. Silvernell. We reverse and remand.
The Silvernells' claims arise out of their purchase of land in Barbour County. Charles McDougle, a licensed attorney, *Page 807 
handled the closing and also served as the agent and signatory for First American Title Insurance Company ("First American"), which, during the closing, issued to the Silvernells a "Commitment For Title Insurance." That commitment read in part:
 "First American Title Insurance Company, a corporation of California, herein called the Company, for a valuable consideration, hereby commits to issue its policy or policies of title insurance as identified in Schedule A, in favor of the proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest covered hereby, in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the
provisions of Schedule A and B and to the Conditions and Stipulations hereof.
". . . .
 "This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six (6) months after the Effective Date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue such policy or policies is not the fault of the Company.
". . . .
"Conditions and Stipulations.
". . . .
 ". . . In no event shall [the Company's] liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions, the Exclusions from Coverage and the Conditions and Stipulations of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein."
(Emphasis added.) Following the closing, First American issued a title insurance policy to the Silvernells; that policy contained the following arbitration provision:
 "Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
 "The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.
 "A copy of the Rules may be obtained from the Company upon request."
Upon discovering certain defects in their title, the Silvernells sued McDougle, his law firm, and others, seeking damages based on allegations of fraud, wantonness, negligence, and breach of fiduciary duty. (McDougle and his law firm will hereinafter be referred to together as "McDougle.") McDougle moved to compel arbitration of the Silvernells' claims, based on the arbitration provision in the title policy. *Page 808 
McDougle argues that the commitment issued during the closing incorporated by reference the arbitration provision in the policy that was later issued and that he had standing, as First American's agent, to enforce that provision. The Silvernells contend that the commitment for the title policy did not contain an arbitration provision; they argue that they did not agree before the closing to arbitrate any future claims they might have and that it was too late after the closing for First American to, as they say it, materially modify the insuring agreement by issuing a policy with an arbitration provision. The Silvernells categorize the policy as merely a "confirmation" of the terms set out in the commitment. The Silvernells also argue, in the alternative, that even if the arbitration provision is binding on them, McDougle has no standing to enforce it because he was not a party to the insurance policy. After carefully examining the record and the briefs, we conclude that the Silvernells are subject to the arbitration provision in their title policy and that McDougle has standing to enforce that provision.
Section 2 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."[1] Whether a contract to arbitrate exists must be determined under general state-law contract principles. CrownPontiac, Inc. v. McCarrell, 695 So.2d 615 (Ala. 1997); Ex parteRush, [Ms. 1980328, March 26, 1999] 730 So.2d 1175 (Ala. 1999). This Court recognized long ago that a contract may incorporate the terms of another document by reference. In Ben Cheeseman RealtyCo. v. Thompson, 216 Ala. 9, 12, 112 So. 151, 153 (1927), this Court stated:
 "It is admitted by both sides that no question of fraud is presented. And in its absence where contracts contain extraneous references of fact and to other documents, the same [enter] therein to the extent that [they are] pertinent, and the parties are bound thereby. And he who omits to inform himself as to such [references of] fact or [as to the] contents and extent of such other writing referred to, in so far as it is reasonable and in contemplation of [the] parties to [the] contract, is bound thereby. Bates v. Harte, 124 Ala. 427, 26 So. 898 [(1899)], 82 Am.St.Rep. 186; 70 L.R.A. p. 106, note; 6 R.C.L. § 43, p. 628."
This Court has recently recognized this rule in the arbitration context. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33,36 (Ala. 1998) (stating that the parties' arbitration provision incorporated by reference the Commercial Arbitration Rules of the American Arbitration Association); Ex parte Conference America,Inc., 713 So.2d 953 (Ala. 1998) (stating that where a contract contains a reference to another document, e.g., a reference to another document containing an arbitration provision, that document is incorporated into the contract). In addition, see 17A Am.Jur.2d Contracts § 400 (1991), which states in part:
 "Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract and[,] therefore, may properly be considered in the construction of the contract. Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties." *Page 809 
See, also, 17A C.J.S. Contracts § 299 (1963).
The Silvernells do not argue that the arbitration provision itself was induced by fraud.[2] We also note that arbitration provisions are not per se unconscionable, Ex parte McNaughton, [Ms. 1961708, August 28, 1998] 728 So.2d 592 (Ala. 1998), and that they cannot be singled out for discriminatory treatment. Doctor'sAssociates, Inc. v. Casarotto, 517 U.S. 681 (1996). The arbitration provision in the Silvernells' policy appears to be standard in form. The commitment issued during the closing clearly apprised the Silvernells that the commitment was subject to the conditions and stipulations in the policy that would later be issued and that once that policy was issued it would then govern the rights and liabilities of the parties. Contrary to the Silvernells' contentions, First American did not materially alter its insuring agreement by issuing a title policy.[3]
The commitment required First American to issue the policy, provided certain conditions were met. Because the conditions and stipulations set out in the policy, which included the arbitration provision, were expressly incorporated by reference into the commitment, the Silvernells' obligation to arbitrate was a part of the insuring agreement from the effective date of the commitment.[4]
Last term, in Fidelity National Title Ins. Co. of Tennesseev. Jericho Management, Inc., 722 So.2d 740 (Ala. 1998), this Court held enforceable an arbitration provision virtually identical to the one at issue here. Although the specific issue presented here was not raised in Fidelity National, this Court in FidelityNational was concerned that a strained and unreasonable construction of the arbitration provision would cause unnecessary confusion in an industry that provides an invaluable service to those purchasing real property in Alabama. We have the same concern in this present case.
For the foregoing reasons, we hold that the arbitration provision is binding on the Silvernells and that McDougle, as First American's agent, has standing to enforce the provision. See Ex parte Gray, 686 So.2d 250 (Ala. 1996); Georgia Power Co. v.Partin, [Ms. 1961192, September 4, 1998] 727 So.2d 2 (Ala. 1998). The trial court's order denying McDougle's motion to compel arbitration is reversed and the case is remanded.
REVERSED AND REMANDED.
HOOPER, C. J., and MADDOX, See, LYONS, and BROWN, JJ., concur.
KENNEDY, COOK, and JOHNSTONE, JJ., dissent.
[1] The Silvernells do not argue that this insurance transaction does not involve interstate commerce. In any event, we note that First American is a California corporation insuring for a premium the title to land in Alabama. The title policy sufficiently affects interstate commerce to invoke the FAA. See FidelityNational Title Ins. Co. of Tennessee v. Jericho Management, Inc.,722 So.2d 740 (Ala. 1998).
[2] The Silvernells do state in their brief that McDougle did not tell them during the closing that the title policy contained an arbitration provision.
[3] The Silvernells do not argue that all of the terms in the title policy that are not also specifically referenced in the commitment are unenforceable; they argue only that the arbitration provision is unenforceable. However, the Silvernells cannot single out the arbitration provision for a challenge of this kind.Doctor's Associates, Inc. v. Casarotto, supra. To be consistent, they must take the position that all of the terms in the title policy that were not specifically referenced in the commitment are outside the scope of the insuring agreement.
[4] This, we think, distinguishes this case from the cases cited by the Silvernells, which stand for the proposition that once an agreement is reached it cannot be unilaterally altered by the addition of a material provision.