**William N. NOBLES, et al., Plaintiffs,**

v.

**RURAL COMMUNITY INS. SERVS., Defendant.**

**No. CIV.A. 00–D–375–S.**

United States District Court, M.D. Alabama, Southern Division.

Nov. 21, 2000.

Stanley J. Murphy, Murphy Law Office, Tuscaloosa, AL, for Plaintiffs.

Douglass Taylor Flowers, Daniel F. Johnson, Douglass Taylor Flowers, Dothan, AL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is Defendant's Motion To Compel Arbitration and Defendant's Motion to Stay, which were filed along with a supporting brief on April 19, 2000. (Docs. No. 4, 5.) Plaintiffs filed a Response on May 9, 2000, and Defendant issued a Reply on May 16, 2000. In addition, both parties have filed various supplemental materials on this issue, which is a matter of first impression. The court has carefully considered the arguments of counsel, the relevant law, and the record as a whole. Because a factual dispute between the parties is subject to mandatory arbitration, the court finds that Defendant's Motions are due to be granted.

## I. JURISDICTION AND VENUE

The court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The parties do not contest personal jurisdiction or venue.

## II. FACTUAL BACKGROUND

The issue presented is whether a provision in a federally-authored insurance contract preempts all of Plaintiffs' state law claims, limits the remedies available to Plaintiffs, and subjects all of Plaintiffs' claims to binding arbitration. Plaintiffs are Alabama residents who farm approximately 7,700 acres of land in Florida. In February 1999, Plaintiffs purchased from Defendant's insurance agent two multiple peril crop insurance policies, which indemnified Plaintiffs for losses to their cotton crop. (Compl. ¶¶ 5–6.) The parties do not dispute that the insurance policies issued by Defendant comport with the standard policy guidelines established by the Risk Management Agency ("RMA"), which is a federal agency formerly known as the Federal Crop Insurance Corporation ("FCIC.") (Mot. at 1.) Put another way, the parties agree that the policies at issue are uniform policies, the terms and conditions of which are mandated by RMA and are published in the Code of Federal Regulations. *See* 7 C.F.R. § 457.8. Essentially, RMA licenses Defendant to sell crop insurance policies that comport with federal guidelines, and RMA reinsures those contracts with the full faith and credit of the United States Government. *See* 7 U.S.C. § 1508(e)(4); 7 C.F.R. §§ 400.161 to—.176.

The face of the one-page agreement signed by Plaintiffs expressly states, "Subject to the provisions of the Federal Crop Insurance Act and the regulations issued under that Act, I hereby apply for insurance on my share of the crops as specified below for the crop year." (Pl.Ex. D, E.) The reverse side of the agreement also states the following:

... Unless rejected or the sales closing date has passed at the time you signed this application, insurance shall be in effect for the crops and crop years specified and shall continue for each succeeding crop year, unless otherwise specified in the policy, until canceled, terminated or voided. The insurance contract,

which includes the accepted application, is defined in the regulation published at 7 CFR Chapter IV. . . .

(*Id.*) The terms and conditions of the policy (Def.Ex. B), which are published at 7 C.F.R. § 457.8, have provisions regarding arbitration and limitation of damages, reading as follows:

20. Arbitration

(a) If you and we fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions published at 7 CFR part 11.

(b) No award determined by arbitration or appeal can exceed the amount of liability established or which should have been established under the policy.

. . . . .

25. Legal Action Against Us

(a) You may not bring legal action against us unless you have complied with all of the policy provisions.

(b) If you do take legal action against us, you must do so within 12 months of the date of denial of the claim. Suit must be brought in accordance with the provisions of 7 U.S.C. 1508(j).

(c) Your right to recover damages (compensatory, punitive, or other), attorney's fees, or other charges is limited or excluded by this contract or by Federal Regulations.

7 C.F.R. § 457.8.

The parties agree that Defendant's insurance agent provided Plaintiffs with the one-page insurance contract but not the standardized insurance policy containing the arbitration and damages limitation provisions. Plaintiffs and Defendant's insurance agent claim that they had no knowledge of the arbitration clause. (Car-

penter Aff.; Nobles Aff.) Defendant maintains that "it is company policy to provide each insured with a copy of his/her policy along with confirmation of the same." (Reply at 4 n. 6.)

Plaintiffs' cotton crop was substantially destroyed. In full compliance with their insurance policy, they notified Defendant of their loss. Defendant refused to pay the loss incurred by Plaintiffs on approximately 5,000 acres of land, claiming that the land was not insured because it had not been planted to a crop and harvested during one or more of the three previous crop years. (Compl.¶¶ 7–9, 11.) Defendant bases its denial on the language of the policy. *See* 7 C.F.R. § 457.8 ¶¶ 8–9. As a result, Plaintiffs seek relief on six state law claims: breach of contract, misrepresentation, suppression, bad faith, negligent and wanton distribution of information via agency, and negligent and wanton supervision of agents. They ask for compensatory and punitive damages, as well as interest and costs for filing this action. (*Id.* ¶¶ 10–32.)

### III. DISCUSSION

While Plaintiffs argue that they have the right to litigate each claim in court, Defendant contends that each claim is subject to arbitration or is pre-empted by federal law. As explained below, the answer lies somewhere in the middle. Plaintiffs must submit to binding arbitration the factual question of whether their 5,000 acres of land were covered by the policy. The arbitrator may award relief as permitted by federal statutes and regulations. After that dispute is resolved, and in keeping with the arbitrator's findings and awards that are entitled to preclusive effect, Plaintiffs may then elect to pursue their common law claims in this forum pursuant to the court's jurisdictional grant under 28 U.S.C. § 1332.

#### A. Legislative History and Statutory Purpose

The Federal Crop Insurance Act was enacted in 1938 as part of President

Franklin D. Roosevelt's New Deal legislation. Its purpose was to rescue and preserve agriculture in order to restore farming to its previous position of strength in the national economy. Specifically, Congress sought "to promote the national welfare by improving the economic stability of agriculture through a system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502. To further these purposes, Congress established the RMA as a wholly government-owned corporate body and agency within the Department of Agriculture. RMA was charged with implementing a nationwide crop insurance program. *See id.* § 1503. RMA and the Secretary of Agriculture have extensive rulemaking authority. *See id.* §§ 1506(*l*), (p). Indeed, RMA has all "such powers as may be necessary or appropriate" to implement the Act's remedial purposes. *Id.* § 1506(k).

Congress amended the Act in 1980 and 1994 with the goal of increasing participation in the insurance program by private-sector insurance companies. Pursuant to statute, RMA presently makes crop insurance available through two methods. First, licensed private insurance agents and brokers may sell policies issued directly by RMA. Second, RMA may reinsure private insurers that issue crop insurance policies, with RMA paying the private insurance companies' operating and administrative costs. *See* 7 U.S.C. § 1508(a)(1); *see also Meyer v. Conlon*, 162 F.3d 1264, 1266 (10th Cir.1998) (per curiam). The second method is obviously the preferred one, as Congress has directed RMA to provide reinsurance "to the maximum extent practicable." 15 U.S.C. § 1508(k)(1); *see also Kansas ex rel. Todd v. United States*, 995 F.2d 1505, 1507–08 (10th Cir. 1993) (discussing legislative history and congressional intent in expanding participation by private insurance corporations).

 Using its rulemaking powers, RMA has dictated the terms of the insurance contracts issued by Defendant and other companies. *See* 7 C.F.R. § 457.7. The terms and conditions preempt any contrary state laws that would apply to other insurance contracts normally issued by private insurance companies. *See* 7 U.S.C. § 1506(*l*); 7 C.F.R. § 400.352; *see also Roberts v. Federal Crop Ins. Corp.*, 158 F.Supp. 688 (E.D.Wash.1958) (regulations prescribing form of crop insurance policies issued by RMA have force and effect of federal statute). At the same time, however, RMA has never intended to extinguish state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts. *See Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Serv., Inc.*, 121 F.3d 630, 634 (11th Cir.1997); *Horn v. Rural Community Ins. Servs.*, 903 F.Supp. 1502, 1505–06 (M.D.Ala.1995). Indeed, by their very terms, the relevant regulations expressly envision litigation. The regulations provide that:

> No policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of damages against the Company issuing such policy ... unless the claimant establishes in a court of competent jurisdiction ... that such damages were caused by the culpable failure of the Company to substantially comply with the Corporation's procedures or instructions in the handling of the claim or in servicing the insured policy, or unless the Company or its agents were acting outside the scope of their authority (apparent or implied) in performing or omitting the actions claimed as a basis for the damage action.

7 C.F.R. § 400.176(b); *see also id.* § 400.352(b)(4).

 Contrary to Defendant's assertions, Section 1508(j)(2)(A) of the Act in no way prevents farmers from suing their private insurance company when that insurance company denies their claim. Section 1508(j)(2)(A) states that, in the face of a

denial of a claim by the RMA or an approved crop insurance provider, an insured's civil action "may be brought against [RMA] or the Secretary only in the United States district court for the district in which the insured farm is located." 7 U.S.C. § 1508(j)(2)(A). The statute simply confers exclusive federal jurisdiction over lawsuits against RMA or the Secretary of Agriculture. *See Horn*, 903 F.Supp. at 1505. It does not preempt state law claims. *See Williams*, 121 F.3d at 634.

## B. Federally Mandated Arbitration Provision

Thus, there is no doubt that Congress has not preempted lawsuits based on state law claims against private insurance providers. But that does not mean that Congress did not intend for the parties to have some factual determinations and disagreements resolved through arbitration. The court must now address three relevant issues. First, do the terms of the RMA-reinsured policy require binding arbitration over "factual determinations" by a private insurance corporation? Second, is the contract enforceable as a matter of public policy? Third, did Plaintiffs and Defendant reach an agreement to arbitrate such "factual determinations"? The answer to all three questions is "yes."

### 1. Factual determinations are subject to mandatory, binding arbitration

As noted previously, *see supra* Part II, all RMA-approved crop insurance contracts provide that any dispute about "any factual determination" made by an insurance corporation "will be resolved in accordance with the rules of the American Arbitration Association." 7 C.F.R. § 457.8 ¶ 20(a). Moreover, an aggrieved insured may bring legal action against the insurance company only after submitting "any factual determination" to arbitration. *Id.* § 457.8 ¶ 25. During a recent round of rulemaking, RMA reaffirmed its commitment to arbitration of factual disputes. In response to comments from various organizations, the agency stated that "arbitration by the rules of the AAA has been a satisfactory and desirable solution to policy disputes.... *The [policy] provisions clearly state that disagreement on any factual determination will be resolved by arbitration. However, if arbitration does not result in agreement, FCIC believes the insured producer should be able to seek resolution through legal action as authorized in section 25.*" 62 Fed.Reg. 65130, 65150 (1997) (emphasis supplied). More recently, in an unpublished opinion, a district court in the Western District of Louisiana enforced the relevant arbitration provisions in a rice insurance policy issued by a private company and reinsured by RMA. *See Crook v. Fireman's Fund Agribusiness, Inc.*, No. 00–434–M, slip op. at 3 (W.D.La.2000).[1] The court is convinced that the *Crook* court correctly found that disputes regarding a factual determination leading to the denial of indemnity under RMA-reinsured policies must be routed to arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes "'a federal policy favoring arbitration.'" *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Courts must rigorously enforce agreements to arbitrate, even if doing so means piecemeal litigation. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218–21, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The parties' intent governs what claims are arbitrable, and the court looks to the wording of the arbitration clause and gives all provisions of the contract their full effect. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Reid v. Casey*, 339 So.2d 79, 82 (Ala.Civ.App.1976) ("[a]ll pro-

1. *See* Doc. No. $^{22}/_{23}$ Ex. A, B.

visions of a contract must, if possible, be given effect.")

■ In this case, Plaintiffs claim entitlement to indemnity for losses to their cotton crop in 1999. There is no dispute that the policy has relevant provisions defining which crops are insured and insurable. Specifically, the policy excludes coverage for losses on lands that have "not been harvested within one of the 3 previous crop years," except in narrow circumstances. *See* 7 C.F.R. § 457.8 ¶ 9. Defendant's insurance adjustors determined that Plaintiffs had not brought some 5,000 acres of their land to harvest during the relevant time frame required by the policy. Plaintiffs seem to disagree.[2] (Compl.¶ 10.) Thus, the court finds that the dispute here focuses on whether or not Defendant made a correct factual determination about Plaintiffs' land use. *See Crook, supra* at 1. *See also Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte, GmbH*, 141 F.3d 1434, 1449 n. 21 (11th Cir.1998) (court determines whether claim falls within arbitration agreement by focusing on factual allegations in complaint).

The court finds that the arbitration provision is mandatory. While Plaintiffs contend that the provision gives them the option of choosing litigation or arbitration, the policy terms clearly state that, in the event of failure to agree on a "factual determination," the disagreement *"will be resolved in accordance with the rules of the American Arbitration Association."* 7 C.F.R. § 457.8 ¶ 20(a) (emphasis supplied). The provision does not state that the disagreement *may* be resolved by arbitration, nor does it say that it will be resolved by arbitration if the plaintiff so chooses. It

says it will be arbitrated. In addition, the policy specifically provides that the insured may not bring legal action against the insurer "unless [the insured has] complied with all of the policy provisions." *Id.* ¶ 25(a). This command would be meaningless if it allowed Plaintiffs to file suit without first complying with the provision requiring arbitration of factual disputes.

In deciding this issue, the court applies general state-law principles while giving "due regard ... to the federal policy favoring arbitration." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Any doubts concerning the construction of the contract should be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927. With these principles in mind, the court finds that the right-to-sue provision, *see* 7 C.F.R. § 457.8 ¶ 25, mandates that Plaintiffs first submit any factual determination to binding arbitration. The arbitrator's findings are subject to judicial review and enforcement, *see* FAA, 9 U.S.C. §§ 9, 10, and the court retains jurisdiction over any subsequent, appropriate state claims brought by the insured against the reinsured company. *See, e.g., Duke v. Crop Growers Ins., Inc.*, 70 F.Supp.2d 711, 715–16 (S.D.Tex.1999) ("the reference to AAA Rules in this insurance policy creates a binding arbitration requirement"); *St. Lawrence Explosives Corp. v. Worthy Bros. Pipeline Corp.*, 916 F.Supp. 187, 190 (N.D.N.Y.1996) (collecting cases supporting the same finding).

---

2. Because the crux of Plaintiffs' argument is that absolutely no claims are subject to binding arbitration, it may be possible that Plaintiffs agree that Defendant correctly interpreted the contract as written. If so, then there is no real "factual determination" at issue. But even if Defendant correctly interpreted the policy, arbitration is mandated because Defendant has invoked the clause permitting an arbitrator to award appropriate relief so long as Plaintiffs relied in good faith upon misrep-

resentations or "other erroneous action or advice" by Defendant's agents. *See* 7 C.F.R. § 457.6 ("whenever" factual disputes arise, reinsured company may choose to submit dispute either to arbitration panel or use its own administrative procedures to resolve such disputes). There being no evidence that Defendant has any meaningful or appropriate administrative procedures in place, the court finds that arbitration by a wholly neutral party is the only viable option in this case.

■ Because interpretation of the RMA's arbitration provision is a matter of first impression, and because both parties strongly disagree about their contractual obligations and duties, the court makes three observations. First, while RMA requires use of the American Arbitration Association ("AAA") rules in resolving disputes over factual determinations, RMA does not necessarily require the use of an AAA arbitrator. *See* 62 Fed.Reg. 65130, 65149–50 (1997) (responding to concern that AAA arbitrators are "not familiar with crop insurance" by observing that "[t]he [contract's] provisions are clear that only the rules of AAA will be used.") Second, any arbitration award is limited to "the amount of liability established or which should have been established under the policy." 7 C.F.R. § 457.8 ¶ 20(b). Put another way, in the event that the arbitrator finds for the insured, the arbitrator may not pile on additional damages or attorney's fees. *See id.* § 457 .8 ¶ 26(a); 62 Fed.Reg. 65130, 65150 (1997); *see also* 7 C.F.R. § 457.8 ¶ 26(b). Third, the arbitrator is empowered to grant recovery for losses—even if they are not covered by the policy—if Plaintiffs establish that they relied in good faith upon a misrepresentation of an insurance agent.[3] Thus, even if the terms of Defendant's policy do not insure against losses on some 5,000 acres of Plaintiffs' cotton crop, the arbitrator may nevertheless award relief as if they do. *See* 7 C.F.R. § 457.6; 56 Fed.Reg. 1345, 1347 (1991) ("FCIC has a long standing policy of honoring the misinformation provided by its agents to insured as long as the statutory requirements of the Federal Crop Insurance Act are followed: If [sic] further requires that private agents and brokers reimburse FCIC when such misinformation is the agent's or broker's responsibility. The innocent party (the insured) should not be penalized.")

### 2. The provisions are enforceable as a matter of public policy

■ Relying on *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir.1998), Plaintiffs contest the agreement's enforceability on several policy grounds. The first is that the provision fails to give proper notice of the scope of claims subject to arbitration. The court disagrees. In *Paladino*, the plaintiff brought common law and statutory claims against her employer, and the court refused to enforce the arbitration provision because it required the plaintiff to arbitrate "any controversy or claim arising out of or relating to" her employment or termination, but it authorized the arbitrator to award damages for "breach of contract only." *Id.* at 1059. Thus, the court found that the agreement was deficient "to the extent that it purports to cover statutory claims" because it did not fairly inform the plaintiff that they were within the scope of the agreement. *See id.* at 1060 (concluding statement). The court made no similar finding with respect to the adequacy of notice of arbitration of the plaintiff's common law claims.[4] *See id.* at 1056 (listing plaintiff's claims).

In this case, the court finds that the arbitration clause clearly placed Plaintiffs on notice that they would have to arbitrate any disagreement over a factual determination made by Defendant. The contract expressly delineates which types of crops are insured against loss. The policy also states that the insurance company will pay for losses only: (1) after reaching agreement with the insured; (2) upon completion of arbitration; or (3) upon entry of a

---

3. The parties have not addressed the issue of precisely which of the arbitrator's findings should be given preclusive effect on any remaining state law claims if Plaintiffs choose to return to court. *See Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360–61 (11th Cir.1985) (issues of preclusion are decided on case-by-case basis). The issue not being raised, it shall not be addressed at this point.

4. To be sure, the court refused to enforce the agreement, but it did not hold that the plaintiff had inadequate notice of the requirement to arbitrate claims besides her Title VII claim.

final judgment by a reviewing court of competent jurisdiction.[5] *See* 7 C.F.R. § 457.8 ¶ 14. The court finds that these and other contractual provisions published in the Code of Federal Regulations served sufficient notice upon Plaintiffs that an arbitrator would make factual findings that would resolve disputes about the scope of coverage under RMA-reinsured policies.

Plaintiffs also argue that the arbitration clause impermissibly limits their available remedies. *See Paladino*, 134 F.3d at 1061–62. The court disagrees. First, the court notes that much of *Paladino* is irrelevant, for the case did not involve a contract with terms and conditions promulgated by the federal government, in accordance with a statutory scheme that preempts inconsistent or contrary state law. *See* U.S. CONST. art. VI. Second, the court finds that Plaintiffs have adequate remedies available to secure indemnity for their lost cotton crops. The arbitrator may award "the amount of liability established or which should have been established under the policy," 7 C.F.R. § 457.8 ¶ 20(a), including remedies for losses arising from "a misrepresentation or other erroneous action" by Defendant's agents.[6] *Id.* § 457.6. Plaintiffs then are

free to pursue their ancillary claims in court. Put another way, under the contract, the arbitrator makes various factual determinations, and those determinations may then become the basis for subsequent legal action.

Moreover, the court cannot find that the agreement is invalid because it requires the parties to use the AAA's rules, even though the rules may impose some degree of filing costs upon Plaintiffs. *Cf. Randolph v. Green Tree Fin. Corp.*, 178 F.3d 1149, 1158 (11th Cir.1999). While mandatory arbitration imposes some costs and burdens upon the parties involved, it does not necessarily follow that arbitration violates public policy, especially when common law claims are raised and the arbitrator is empowered to award adequate relief. *See Young v. Jim Walter Homes, Inc.*, 110 F.Supp.2d 1344, 1349–50 (M.D.Ala.2000); *Sankey v. Sears, Roebuck & Co.*, 100 F.Supp.2d 1290, 1298 (M.D.Ala.2000); *see also Brown v. Surety Fin. Serv., Inc.*, 2000 WL 528631 at *3 (N.D.Ill.2000) ("AAA rules contain safeguards protecting plaintiffs from inordinate arbitration costs.") In this case, no remedial statutory purpose is jeopardized by the arbitration of factual disputes related to RMA-reinsured insur-

---

**5.** This provision does not give Plaintiffs the right to sue prior to the resolution of their factual dispute and the award of appropriate relief by the arbitrator. It merely recognizes that parties may need judicial enforcement of an arbitrator's award. *See* FAA, 9 U.S.C. § 9.

**6.** The issue being neither adequately addressed nor properly before the court given that negotiations may dispose of this entire matter without the need for further judicial intervention, the court makes no finding whether the policy limits Plaintiffs' possible recovery on any of their state law claims. The relevant regulations are ambiguous, at best, and require more extensive analysis by the parties. *Compare* 7 C.F.R. § 457.8 ¶¶ 25–26 (limiting damages recoverable under insurance policy) *with* 7 C.F.R. § 400.176(b) (allowing insured to recover damages caused by improper behavior by insurer's agents).

The court notes its doubt that Congress intended to provide Plaintiffs with access to the courthouse while eliminating any poten-

tial for meaningful relief. *See, e.g., Owens v. International Bus. & Mercantile Reassur. Co.*, 1991 WL 137603 (10th Cir.1991). *Cf. Hampton v. International Business and Mercantile Reassurance Co.*, 909 F.2d 1577 (11th Cir. 1990). At this point, however, the court solely finds that Plaintiffs must submit their factual dispute as to the coverage of the 5,000 acres to binding arbitration, and that the arbitrator is empowered to award adequate relief. *See* 7 C.F.R. §§ 457.6, 457.8. If Plaintiffs elect to push on with their remaining claims, then the court will revisit this issue.

Moreover, the court does not rule out the likelihood that, under the doctrine of claim preclusion, at least some of the arbitrator's findings can serve as the basis for Plaintiffs' common law claims raised against Defendant in court. *See Greenblatt*, 763 F.2d at 1360–61; *see also Duke v. Crop Growers Ins., Inc.*, 76 F.Supp.2d 764, 766 (S.D.Tex.1999) (after arbitrator resolves factual disputes, parties may then elect to arbitrate their remaining claims or to invoke their right to trial by jury).

ance policies. Indeed, the statutory scheme in question expressly calls for such alternate dispute resolution. *See* 7 C.F.R. § 457.8 ¶ 20.

Finally, the court notes that the Eleventh Circuit's decision in *Williams* did not hold that Plaintiffs may litigate without first submitting their factual disputes to arbitration. *See Williams*, 121 F.3d at 634. *Williams* dealt with the issue of federal preemption, but the Court did not consider the issue of arbitration. The Court held that "an action against the FCIC or the Secretary is not the exclusive remedy for the denial of a claim by a private company reinsured by the FCIC." *Id.* at 635. The Court did not hold, however, that arbitration of factual disputes is not a legitimate component of the Act's comprehensive scheme for national crop insurance. *Cf. Old Republic Ins. Co. v. Federal Crop Ins. Corp.* 746 F.Supp. 767, 770 (N.D.Ill.1990). Congress has found that arbitration is a viable and legitimate form of alternate dispute resolution. Based on the foregoing, the court finds that arbitration in this case comports with the purposes of the Federal Crop Insurance Act and the Federal Arbitration Act.

### 3. The parties agreed to the arbitration provision

 Finally, the court finds that the parties agreed to arbitrate the factual disputes in this case. The FAA provides for the enforcement of written arbitration agreements involving transactions in interstate commerce. *See* FAA, 9 U.S.C. § 2. This contract involves interstate commerce. The issue, therefore, is whether a contract exists. The court looks to Alabama contract law, as pronounced by the Alabama Supreme Court. The Court has held that a contract may incorporate the terms of another document by reference, including terms requiring arbitration. *See McDougle v. Silvernell*, 738 So.2d 806, 808 (Ala.1999); *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 36 (Ala.1998). A party's signature to a contract manifests

assent to its terms. *See Southern Energy Homes, Inc. v. Hennis*, 2000 WL 1074048 at *3 (Ala.2000); *Commercial Credit Corp. v. Leggett*, 744 So.2d 890, 895–96 (Ala. 1999).

 *McDougle* provides the most relevant and recent discussion of the proper construction of a contract that makes reference to terms in other extrinsic documents. The plaintiffs in *McDougle* purchased some land, and at the closing the attorney for a title insurance company provided them with a policy titled "commitment for insurance," which they signed. *See McDougle*, 738 So.2d at 806–07. The commitment paper limited the company's liability in accordance with various exclusions in the policy which were "hereby incorporated by reference and ... made a part of this [contract]" but were not provided to the plaintiffs at the time of the paper's execution. *Id.* The plaintiffs subsequently received the policy, which contained an arbitration provision that the plaintiffs sought to avoid. First, the Court rejected the argument that the arbitration provision was the product of fraud due to the fact that the title company's attorney did not alert them during the closing of its existence. *See id.* at 809. Instead, the Court found that the original paper put the plaintiffs on notice that the policy was subject to terms and conditions that would be provided subsequently and would govern the rights and liabilities of the parties. The Court stated:

> It is admitted by both sides that no question of fraud is presented. And in its absence where contracts contain extraneous reference of fact and to other documents, the same enter therein to the extent that they are pertinent, and the parties are bound thereby. And he who omits to inform himself as to such references of fact or as to the contents and extent of such other writing referred to, in so far as it is reasonable and in contemplation of the parties to the contract, is bound thereby.

*Id.* at 808 (quoting *Bates v. Harte,* 124 Ala. 427, 26 So. 898 (1899)). Thus, the Court held that the arbitration provisions were "expressly incorporated by reference into the commitment" and were binding upon the parties. *Id.* at 809.

This case differs from *McDougle* in no material way. It is undisputed that the RMA-reinsured policies signed by Plaintiffs state that they are "[s]ubject to the provisions of the Federal Crop Insurance Act and the regulations issued under that Act." (Pl.Ex. D, E.) These regulations are published in the Code of Federal Regulations, and they include an arbitration provision. To be sure, Plaintiffs contend that they had no knowledge of the provision; thus, they argue that they never assented to its terms. But a similar attempt to avoid arbitration was rejected in *McDougle,* 738 So.2d at 809 n. 2, and so it must be rejected here.

Indeed, Plaintiffs concede the general proposition that contractual terms can be incorporated by reference, yet they argue that this principle should not apply to contracts that make reference broadly to federal statutes and regulations. The court disagrees. It is well known that farmers contracting directly with RMA are charged with knowledge of the relevant insurance regulations and policy provisions. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). This holding has been extended to charge farmers with notice of the same provisions in RMA-reinsured policies sold by private insurance corporations. *See, e.g., Walpole v. Great American Ins. Companies,* 914 F.Supp. 1283, 1290 (D.S.C.1994). *Walpole* makes perfect sense. Private companies today sell more than 85 percent of all federal crop insurance policies, and Congress has expressed an unambiguous desire to encourage private insurers in this market. *See Todd,* 995 F.2d at 1508. Pursuant to federal law, each and every one of these private insurance contracts has an arbitration provision. This industry custom is sufficient to place farmers on

notice of the same. *See Stedor Enter., Ltd. v. Armtex, Inc.,* 947 F.2d 727, 733 (4th Cir.1991); *Pervel Indus., Inc. v. T M Wallcovering, Inc.,* 871 F.2d 7, 8 (2d Cir. 1989); *see also McDougle,* 738 So.2d at 809.

Finally, although Plaintiffs point the court to *Ex parte Beasley,* 712 So.2d 338 (Ala.1998) and *Ex parte Pointer,* 714 So.2d 971 (Ala.1997), neither case helps their cause. *Pointer* holds that a party cannot be bound to an arbitration agreement if the contract calls for one's signature as assent to each relevant term in the contract, and the signature is not tendered. *See Pointer,* 714 So.2d at 974 (visual exhibit). *Ex parte Beasley* holds, as a matter of law, that one does not agree to arbitrate if the sole evidence of such agreement is a signature upon a handbook that states that its terms are not binding. *See Ex parte Beasley,* 712 So.2d at 340. To be sure, the Court suggested that "a document that contains a valid arbitration clause" must bear the party's signature. *Id.* at 341. This statement, however, is best construed to mean that, when a party is given a pamphlet with two documents, and one of them contains a binding arbitration clause while the other states that the terms within the pamphlet are not binding, then the court may give effect to the arbitration clause if it has been signed. *See id.* at 340–41. Plaintiffs' proposed alternative reading—namely, that an arbitration provision is not valid unless one's signature appears on the face of the document containing the provision—would contravene fundamental principles of contract interpretation and would run afoul of the Court's holding in *McDougle. See* 738 So.2d at 809 (terms of extrinsic documents can be incorporated by reference, even when extrinsic document contains arbitration clause and is not signed by the party).

Given that courts cannot single out arbitration clauses for discriminatory treatment, *see Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the court finds no

support for Plaintiffs' position that, under Alabama law, the relevant arbitration clauses were not incorporated into the policies at issue in this case. Moreover, for all the preceding reasons, the court finds that Plaintiffs agreed to the arbitration provision in their insurance policies.

## V. CONCLUSION

The court finds that Plaintiffs have agreed to arbitrate any factual determination arising out of their RMA-reinsured crop policies. The agreement is enforceable as a matter of public policy. The arbitrator is empowered to make such factual determinations and award such relief as permitted by the terms and conditions of the regulations promulgated by the Department of Agriculture, the Risk Management Agency, and the insurance policies signed by the parties. *See* 7 C.F.R. §§ 457.6, 457.8 ¶¶ 20, 25–26. The issues not having been presented, the court does not decide precisely which of the arbitrator's findings might have a preclusive effect in any subsequent court proceeding. If the parties cannot amicably resolve this entire matter, then Plaintiffs may litigate their remaining causes of action after first complying with the relevant contractual provisions. *See* 7 C.F.R. § 457.8 ¶ 25. Because the issue is not properly before the court at this juncture, the court expresses no opinion on whether Plaintiffs are limited in the damages they might possibly recover on such claims. This issue may be revisited at a later date.

## VI. ORDER

It is hereby CONSIDERED and ORDERED that Defendant's Motion To Stay and Motion To Compel Arbitration be and the same are hereby GRANTED. Plaintiffs are ORDERED to submit their factual dispute regarding coverage of the 5,000 acres to binding arbitration in the manner provided for in the arbitration agreement. This action shall be and the same is hereby STAYED pending arbitration. *See* FAA, 9 U.S.C. §§ 3, 4. Within three months and six months of today's date, the parties be and are hereby ORDERED to report jointly to the court as to the status of arbitration, if this matter has not been disposed of by then.

It is further CONSIDERED and ORDERED: (1) that the Clerk of the Court REMOVE this action from the court's active docket and PLACE said action on the court's administrative docket, with leave for either party to move to reinstate the same on the active docket at the conclusion of arbitration proceedings; (2) that such reinstatement will cause the filing date of the action to relate back to the original filing date of this action; and (3) that any motion for reinstatement shall be filed no later than the time prescribed by the FAA, 9 U.S.C. § 12.