[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14482
Non-Argument Calendar
_____

D.C. Docket No. 7:13-cv-00506-LSC

HANOVER INSURANCE COMPANY, THE,

Plaintiff-Appellee,

versus

ATLANTIS DRYWALL & FRAMING LLC, et al.,

Defendants,

BAY MEADOWS CONSULTING LLC,
MARILOURDES DEYO,
LAURENCE LAMPHERE,
CHRISTIN M. LAMPHERE,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 29, 2014)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, we must determine whether the district court properly denied Bay Meadows Consulting (Bay Meadows), Marilourdes Deyo, and Laurence and Christin Lampheres' motions to compel arbitration. For the reasons that follow, we vacate and remand.

I.

In 2010, the University of Alabama North Bluff Residential Community Project hired Brice Building Company (Brice) as the general contractor for development of a student housing complex. In March 2011, Brice subcontracted with Atlantis Drywall and Framing (Atlantis) for work on the North Bluff project. The subcontract contained an arbitration clause requiring arbitration over any dispute or claim "between the parties (i) arising out of or related or collateral to the provisions and/or subject matter of this Subcontract or the breach thereof . . . ." The clause further provided that "[t]he parties intend that the scope of this arbitration clause shall be construed as broadly as possible so as to include, but not be limited to, the enforcement of this arbitration provision, the arbitrability of a particular claim or dispute . . . ."

In order to work on State of Alabama projects like the North Bluff complex, Atlantis was required to obtain payment and performance bonds, which they

2

secured from Hanover Insurance Company (Hanover).  Before Hanover would issue any bonds, however, it required indemnification by Atlantis, Bay Meadows, Deyo, and the Lampheres.[1]  The Indemnification Agreement did not contain an arbitration clause, nor did it expressly incorporate by reference any other document.  All parties entered into the Indemnification Agreement in May 2011.  On June 30, 2011, Hanover issued the payment and performance bonds.  The bonds specifically referenced and incorporated the subcontract between Brice and Atlantis.

Atlantis later defaulted on the work, and Hanover made payments under the bonds.  Hanover then sought indemnification.  When the parties failed to comply, Hanover filed a complaint in the district court naming as defendants Bay Meadows, Marilourdes Deyo, and Laurence and Christin Lamphere (collectively, "the indemnitors").[2]  Hanover sought indemnification, exoneration and *quia timet*, specific performance, and damages for breach of contract.   The indemnitors moved to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*.[3]

In the motions to compel, the indemnitors argued that Hanover was required to arbitrate its claims under the arbitration clause in the subcontract.  They further

[1]  Deyo and Laurence Lamphere are members of Atlantis and Bay Meadows.
[2]   The complaint also named Atlantis and Jeffrey Deyo, who are not parties to the appeal.
[3]  Laurence and Christin Lamphere filed a joint motion to compel.  Although the remaining defendants each filed separate motions, they adopted the Lampheres' motion.

argued that Hanover was bound by the arbitration clause because the Indemnification Agreement incorporated the subcontract between Brice and Atlantis.

The district court denied the motions to compel, finding that Hanover did not agree to arbitrate, the Indemnification Agreement did not explicitly incorporate any other contract because it did not "expressly refer to and sufficiently describe" the bonds or subcontract, and the court could not view the three documents as a single transaction because the parties differed.[4]  Finally, the court explained that Hanover could not be compelled to arbitrate because Hanover's claims did not arise out of the subcontract, as Hanover was not claiming a direct right or benefit under the subcontract but was seeking only to enforce the terms of the Indemnification Agreement.  This interlocutory appeal under 9 U.S.C. § 16(a) followed.

## II.

Indemnitors Bay Meadows, Deyo, and the Lampheres argue on appeal that the district court erred by concluding that they could not enforce against Hanover an arbitration clause contained in the subcontract between Brice and Atlantis.  The parties do not dispute that the payment and performance bonds Hanover issued to

---

[4]  In a separate action, the district court found that Hanover was required to arbitrate its claims against Brice because Hanover was subject to the arbitration agreement after incorporating the subcontract into the bonds.  *See Hanover Ins. Co. v. Brice*, 7:13-cv-00547-LSC, doc. 21 (N.D. Ala. May 31, 2013).  The district court also granted a motion to compel Hanover to arbitrate its claims against Atlantis.  *See Hanover Ins. Co. v. Lamphere*, 7:13-cv-00506-LSC, doc. 41 (N.D. Ala. Oct. 7, 2013).

Atlantis and Brice incorporated by reference the subcontract. The indemnitors contend that the subcontract was sufficiently incorporated by reference into the Indemnification Agreement to require arbitration of Hanover's claims against the indemnitors.

"We review *de novo* the district court's denial of a motion to compel arbitration." *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (citation omitted). The FAA establishes a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 668-69 (2012) (citations and internal quotations omitted). And "[c]ourts must rigorously enforce agreements to arbitrate, even if doing so means piecemeal litigation." *Nobles v. Rural Cmty. Ins. Servs.*, 122 F. Supp. 2d 1290, 1295 (M.D. Ala. 2000) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-20 (1985)). "Because arbitration is a matter of contract, however, the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (citation omitted). Thus, where the parties have not agreed to arbitrate, a court cannot compel them to arbitration. *See id.* An exception to this rule allows a nonparty to "force arbitration 'if the relevant state contract law allows him to enforce the agreement' to arbitrate." *See Lawson*, 648 F.3d at 1170 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)); *see also McDougle v. Silvernell*, 738

5

So.2d 806, 808 (Ala. 1999) ("Whether a contract to arbitrate exists must be determined under general state-law contract principles").

As an initial matter, there is little dispute that Hanover consented to arbitrate claims arising out of the subcontract between Brice and Atlantis; the performance and payment bonds incorporated by reference the subcontract, and the subcontract contained the arbitration clause. *See U. S. Fid.& Guar. Co. v. West Point Constr. Co.*, 837 F.2d 1507, 1508 (11th Cir. 1988). At issue, is whether the indemnitors can force Hanover to arbitrate Hanover's claims against them under the arbitration clause in the subcontract between Brice and Atlantis. Because the indemnitors were not signatories on the subcontract, and the Indemnification Agreement does not expressly contain an arbitration clause, the indemnitors can compel arbitration in only limited circumstances.

First, the indemnitors can compel arbitration if the Indemnification Agreement incorporated the subcontract. *McDougle*, 738 So.2d at 808 (explaining that a party may incorporate by reference another document containing an arbitration provision). To incorporate another document, the writing must "expressly refer[] to and sufficiently describe[]" the other document. *Fid. & Deposit Co. of Maryland v. Jefferson Cnty. Comm'n*, 756 F. Supp. 2d 1329, 1337 (N.D. Ala. 2010).

6

Alternatively, the subcontract may be incorporated by reference if it is part of the same transaction, that is, if the bonds, Indemnification Agreement, and subcontract are all part of a single transaction. *Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas*, 891 So.2d 287, 290 (Ala. 2004). Generally, this involves documents signed by the same parties at or near the same time. *See, e.g.*, *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, 837 So.2d 253, 267 (Ala. 2002) ("two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract" (internal citation omitted)); *cf. Bailey v. Hannibal & St. J.R. Co.*, 84 U.S. 96, 108 (1872) ("[I]t is well-settled law that several writings executed between the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction, nor is it necessary that the instruments should in terms refer to each other if in point of fact they are parts of a single transaction"). But Alabama law has never held that the parties *must* be the same. *See Ex parte Harris*, 837 So.2d 283, 288 (Ala. 2002) (accepting that "two or more agreements may be construed as one contract even though the parties to the agreements are not all the same, such as where some of the documents are executed by parties who have no part in executing the others, provided that the agreements in question relate to the same subject matter"); *see also Haddox v. First Ala. Bank of Montgomery*, 449

So.2d 1226, 1229-30 (Ala. 1984) (reading as a single contract several documents concerning the same subject matter but signed by different parties).

Lastly, under Alabama law, a nonsignatory can seek arbitration if (1) the nonsignatory is a third-party beneficiary of the contract containing an arbitration provision, and (2) the nonsignatory's claims are "intertwined with" and "related to" the contract. *Cook's Pest Control, Inc. v. Boykin*, 807 So.2d 524, 526-27 (Ala. 2001). Where the specific language of the arbitration clause limits its scope to claims involving the parties, courts have been reluctant to compel nonsignators into arbitration. *See id.* at 527.

The district court found none of these circumstances present here. We disagree because we conclude that the Indemnification Agreement, bonds, and subcontract should be viewed as a single transaction. Although the parties involved in signing each document differed, and the documents were signed on three separate occasions between March and June 2011, the contracts relate to the same subject matter. *See Ex parte Harris*, 837 So.2d at 288; *see also Love v. Fleetway Air Freight & Delivery Serv.,*875 So.2d 285, 289 (Ala. 2003) (explaining that the court would construe documents together even though they were not executed contemporaneously, as long as the documents refer to one another); *K&C Dev. Corp. v. AmSouth Bank*, 597 So.2d 671, 674 (Ala. 1992) (considering together documents that were signed more than six months apart). Moreover, the

8

parties were aware that Hanover required the Indemnification Agreement before it would issue the bonds, and thus the issuance of the bonds depended on the indemnification. And Atlantis could not perform its work under the subcontract without the bonds. *See, e.g., Kandlis v. Houtari*, 678 A.2d 41, 43 (Me. 1996) (construing guaranties signed by different shareholders as one agreement because the guaranties concerned the same subject matter and were signed "for the same purpose") (cited with approval in *Ex parte Harris*, 837 So.2d at 287). The Indemnification Agreement refers to bonds that Hanover may enter into, even though it does not specifically identify the bonds at issue. And although the Indemnification Agreement is not limited to the Atlantis-Brice subcontract and bonds, there is no dispute that the parties entered into the Indemnification Agreement with the Brice-Atlantis subcontract and the specific payment and performance bonds in mind.

The district court's conclusion that the documents were not related because "at any of these stages the parties could have contracted with someone else without destroying the contract" misses the point. The parties were interconnected and the documents concerned the same subject matter. Thus, we cannot conclude that the Indemnification Agreement pertains to a different subject matter than the subcontract and bonds, and the district court erred when it declined to read the three documents as a single transaction. *See Ex parte Harris*, 837 So.2d at 288.

9

We thus vacate and remand with instructions to the district court to compel arbitration.

**VACATED and REMANDED.**