Bobby Love appeals from a summary judgment entered in favor of Fleetway Air Freight Delivery Service, L.L.C. ("Fleetway"), James M. Adkinson, and Billy J. Fuller by the Houston Circuit Court. We reverse and remand.
 Facts
On August 26, 1999, Adkinson, Fuller, and Love formed Fleetway, a limited liability company, by filing articles of organization with the judge of probate of Houston County. Adkinson, Fuller, and Love were the only members of the limited liability company. The articles of organization identified Love as the initial managing member of Fleetway. On that same date, Adkinson, Fuller, and Love entered into a contractual agreement entitled "Operating Agreement of Fleetway Air Freight 
Delivery Service, L.L.C.," which set forth the rights, duties, and relationships of the members and set forth the manner in which Fleetway's business would be conducted. This operating agreement defined certain pertinent terms and addressed, among other things, such matters as capital contributions by the members, allocations and distributions to the members, memberships and dispositions of interests, the management of the company, and the procedure for dissolving, liquidating, and terminating Fleetway. An exhibit attached to the operating agreement provided that each member had contributed $1,000 in capital to Fleetway and that each member was credited with one unit of membership interest in Fleetway. *Page 287 
On September 7, 1999, Adkinson, Fuller, and Love entered into another agreement, entitled "Member's Agreement," which contained additional restrictions and obligations. In the member's agreement, Adkinson, Fuller, and Love agreed as follows:
 "(1) In the event that any Member should withdraw or retire from the Company during the thirty-six (36) month period following the date set forth below, and/or in the event that Member, Bobby N. Love, should withdraw or retire from employment with the Company during the thirty-six (36) month period following the date set forth below, said withdrawing Member's right, title and interest in the Company and in the assets of the Company shall be forfeited in equal shares to the continuing Members and the continuing members shall continue the business of the Company under its present name by themselves and shall pay to the withdrawing member the sum of One Hundred Dollars and No Cents ($100.00) for his interest in the Company.
 "(2) In the event that any Member should withdraw or retire from the Company during the thirty-six (36) month period following the date set forth below, and/or in the event that Member, Bobby N. Love, should withdraw or retire from employment with the Company during the thirty-six (36) month period following the date set forth below, such withdrawing member shall thereby give up all of his right, title, and interest in the Company and in the assets of the Company. In consideration for such, the continuing Members shall take the appropriate measures necessary to release the withdrawing Member from any further personal liability in regard to the debts of the Company or any debts made for the benefit of the Company, and shall indemnify and hold the withdrawing Member harmless therefrom."
In July 2000, Adkinson and Fuller, who were dissatisfied with the manner in which Love was managing Fleetway, decided that Love should be dismissed as manager effective July 31, 2000. Adkinson advised Love of their decision. On August 9, 2000, Adkinson sent Love written confirmation of his dismissal as manager of Fleetway. Adkinson and Fuller assert that they orally advised Love that pursuant to the member's agreement he was entitled to $100 for his interest in Fleetway and to be released from further liability for Fleetway's debts. Fleetway, Adkinson, and Fuller apparently are contending that Love's dismissal constituted his withdrawal from Fleetway and that, therefore, he was entitled to nothing more for his membership interest.
Love refused the terms offered by Adkinson and Fuller. He denied that he had withdrawn from Fleetway or that he had forfeited his interest in the company. On August 20, 2002, Love sued Fleetway, Adkinson, and Fuller in the Houston Circuit Court. In his complaint, Love asserted that Fleetway, Adkinson, and Fuller had breached the operating agreement, converted his income from Fleetway, and committed fraud by representing to him, or causing to be represented to him, in October 2000 that he continued to enjoy the same membership rights as did Adkinson and Fuller.
Fleetway, Adkinson, and Fuller moved for a summary judgment. They asserted that Love effectively withdrew from Fleetway when he was dismissed as manager and that the terms of the member's agreement and the operating agreement resolved all of Love's claims in their favor, as a matter of law.
Love opposed this motion, submitting his own affidavit, the affidavit of certified *Page 288 
public accountant Janet M. Kelley, and a copy of correspondence from an attorney for Fleetway, Adkinson, and Fuller. In his own affidavit, Love stated that he did not withdraw from Fleetway, but that his employment with Fleetway had been terminated by Adkinson and Fuller. Love also stated that on October 4, 2000, after Love had been dismissed as manager, an attorney for Adkinson and Fuller wrote Love's attorney and indicated that Love continued to be a member of Fleetway. Love asserted that he relied on the statement to that effect when he personally guaranteed a loan taken out by Fleetway in the following year. Love also stated in his affidavit that on February 9, 2002, Adkinson signed a federal tax return reflecting partnership income (a Form 1065) for the tax year 2001 indicating that Love had received in excess of $31,000 in income from Fleetway. Love alleges that although he had requested that Fleetway, Adkinson, and Fuller pay him that amount in income for 2001, he says he never received it. Love asserts that he incurred a tax liability for the partnership income attributed to him by Adkinson on the 2001 return.
Kelly asserted in her affidavit that she prepared Love's tax returns for the year 2001. She also asserted that Love received from Fleetway a Form 1065 with a Schedule K-1 attached for the tax year 2001 indicating that Love had received over $31,000 in income as a member of that company. Kelly asserted that Love incurred a tax liability as a result of the income attributed to him on that return.
Finally, Love filed a copy of an October 4, 2000, letter to Love's attorney from Adkinson and Fuller's attorney. That letter states, in pertinent part:
 "The other Members of the company recognize that Mr. Love remains a Member of the company subject to the same rights, responsibilities, duties, and obligations that they have in regard to [Fleetway], and have no problem with his continuing in such position. However, if Mr. Love wishes to withdraw from the company. . . ."
On March 12, 2003, the trial court granted the summary-judgment motion filed by Fleetway, Adkinson, and Fuller. Love appeals.
 Standard of Review
In American Liberty Insurance Co. v. AmSouth Bank, 825 So.2d 786 (Ala. 2002), this Court stated the applicable standard of review governing an appeal from a trial court's ruling on a motion for summary judgment:
 "We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary-judgment motion:
 "'We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.'"
825 So.2d at 790 (quoting Nationwide Prop. Cas. Ins. Co. v. DPFArchitects, P.C., 792 So.2d 369, 372 (Ala. 2000) (citations *Page 289 
omitted in American Liberty Ins. Co.)).
 Discussion
To determine whether the summary judgment was proper, we must determine whether Fleetway, Adkinson, and Fuller presented substantial evidence that Love's dismissal as manager was a withdrawal from Fleetway[1] and whether any other genuine issue of material fact exists. In order to make this determination, we must review de novo the evidence presented to the trial court and we must construe the language of the operating agreement and the member's agreement together. See K C Dev. Corp. v. AmSouthBank, 597 So.2d 671, 674 (Ala. 1992) (recognizing that documents need not be executed contemporaneously in order to be construed together, so long as they refer to one another).
Love argues that the term "withdraw," as it is used in the member's agreement, requires a volitional act on the part of the withdrawing member. He asserts that he did not act voluntarily, but rather, that his employment was terminated against his wishes by Adkinson and Fuller. Therefore, he argues, he did not withdraw from membership in the limited liability company, and he continues to be a member of Fleetway with all the rights, responsibilities, and privileges of a member. He submitted affidavit testimony to this effect to the trial court.
Love also argues that Adkinson and Fuller continued to recognize him as a member of Fleetway after they terminated his employment as its manager. In support of this argument, he relies upon the October 4, 2000, letter from Adkinson and Fuller's attorney, in which the attorney states that Adkinson and Fuller recognized that Love continued to be a member of Fleetway. Love also relies on the affidavit of Janet Kelly, who testified that Love received the Form 1065 and Schedule K-1 for the tax year 2001 from Fleetway indicating that in that year Adkinson and Fuller attributed to Love over $31,000 in income as a member of Fleetway. Love claims that although Fleetway, Adkinson, and Fuller had attributed this income to him on the Form 1065, they refused to pay him the amount they had attributed.
Fleetway, Adkinson, and Fuller argue that the termination of Love's employment as the managing member of Fleetway constituted a "withdrawal" of Love's membership in Fleetway. They further assert that because he "withdrew" from Fleetway, Love forfeited his membership interest and that, under the terms of the member's agreement, he is entitled to receive for his membership interest only $100 and a release for future liability.
In further support of their motion, Fleetway, Adkinson, and Fuller assert that the language of the operating agreement clearly establishes that the term "withdraw" is used in the context of an involuntary act and not a voluntary one. They specifically rely upon the definition of "withdrawing member" in Article 1 of the operating agreement, which provides that the term "`Withdrawing Member' has the meaning given that term in Paragraph 5.03(b)." However, Paragraph 5.03(b) does not define "withdrawing member" or "withdraw." Paragraph 5.03(b), entitled "Involuntary Transfers," addresses transfers of membership interests in the context of the death, incompetency, bankruptcy, withdrawal, or dissolution of a member. *Page 290 
In each of those situations, the operating agreement refers to the member as a "withdrawing member." Fleetway, Adkinson, and Fuller argue that in each of those situations, the withdrawal of the member is an involuntary act rather than a voluntary one. They argue that there is not a single instance in the member's agreement or in the operating agreement in which "withdrawal" from membership in the limited liability company is described as a voluntary action. Thus, they argue, a withdrawal, within the meaning of the operating agreement, is an involuntary act and their termination of Love's employment as manager acted as a withdrawal.
Fleetway, Adkinson, and Fuller also rely upon paragraph 5.08 of the operating agreement. That paragraph provides that "[a] Member does not have the right or power to withdraw from the Company as a Member." They argue that this paragraph also supports their position that withdrawal is an involuntary act.
We disagree with the interpretation Fleetway, Adkinson, and Fuller give the term "withdraw" and "withdrawal." We first note that the most appropriate definition of "withdraw" contained in Merriam-Webster'sCollegiate Dictionary (11th ed. 2003) for this case is "to remove oneself from participation."[2] Thus, unless defined otherwise in the parties' agreements, the act of withdrawal is usually considered to be a voluntary act.
We find nothing in the member's agreement or in the operating agreement that persuades us to give the terms "withdraw" and "withdrawing member" anything other than their ordinary and usual meanings. See Jim BurkeAuto., Inc. v. McGrue, 826 So.2d 122 (Ala. 2002) (recognizing that when there is no indication that the terms of a contract are used in a special or technical sense, the terms will be given their ordinary, plain, and natural meaning). As Love correctly argues, paragraph 5.03(b) lists those events at the occurrence of which the withdrawing member is restricted from making a voluntary transfer of his membership interest. Therefore, those events are grouped together under "involuntary transfers." The mere fact that a member's withdrawal is mentioned under a paragraph of an agreement entitled "Involuntary Transfers" does not convert the voluntary act of withdrawing into an involuntary act. In such a situation it is the transferring of the membership interest that is involuntary, not the withdrawal.
Further, construing the member's agreement and the operating agreement together, we conclude that paragraph 5.08 of the operating agreement, which purports to prohibit a member from withdrawing from the limited liability company,[3] conflicts with the member's agreement, which imposes certain restrictions and obligations upon any member who, in fact, withdraws. The member's agreement was executed after the operating agreement, and the members agreed that *Page 291 
the provisions of the member's agreement took priority over any provisions of the operating agreement that were determined to be conflicting.[4] Thus, by executing the member's agreement, the members agreed that withdrawal from Fleetway was an option that could be exercised by a member, thereby voiding paragraph 5.08 of the operating agreement.
Finally, reviewing the evidence presented, we cannot say that Fleetway, Adkinson, and Fuller have met the burden required of them under Rule 56, Ala.R.Civ.P., to establish that no genuine issue of material fact exists in this case. They have not established by substantial evidence that Love withdrew from Fleetway. The record contains no response from Fleetway, Adkinson, and Fuller to Love's evidence regarding the income he alleges Fleetway, Adkinson, and Fuller attributed to him in 2001; Fleetway, Adkinson, and Fuller did not respond to Love's testimony that he guaranteed a loan for Fleetway in 2001 in reliance on their attorney's October 2000 representation that he continued as a member in Fleetway.
We conclude that Fleetway, Adkinson, and Fuller were not entitled to a judgment as a matter of law on Love's claims alleging breach of contract, conversion, or fraud. We reverse the summary judgment and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and SEE, BROWN, and HARWOOD, JJ., concur.
[1] Fleetway, Adkinson, and Fuller made no other argument in support of their summary-judgment motion.
[2] Merriam-Webster's Collegiate Dictionary (11th ed. 2003) lists the following definitions for the word "withdraw":
 "vt 1a: to take back or away: REMOVE . . . b: to remove from use or cultivation c: to remove (money) from a place of deposit d: to turn away (as the eyes) from an object of attention . . . e: to draw (as a curtain) back or aside 2a: to remove from consideration or set outside a group . . . b(1): TAKE BACK, RETRACT (2): to recall or remove (a motion) under parliamentary procedure vi 1a: to move back or away: RETIRE b: to draw back from a battlefield: RETREAT 2a: to remove oneself from participation b: to become socially or emotionally detached . . . 3: to recall a motion under parliamentary procedure."
[3] Paragraph 5.08 provides: "Withdrawal. A Member does not have the right or power to withdraw from the Company as a Member."
[4] See paragraph (4) of the member's agreement: "All other terms and conditions of the August 26, 1999, Operating Agreement of [Fleetway], not inconsistent herewith shall remain in full force and effect."